**1822-CC00344**

Electronically Filed - City of St. Louis - February 16, 2018 - 05:09 PM

**IN THE CIRCUIT COURT OF THE CITY OF ST. LOUIS
STATE OF MISSOURI**

| | | |
|---|---|---|
| ELIANA ARIAS AMARO, ROGER SMITH | ) | |
| CANORI IZQUIERDO, SIMONE | ) | |
| VICTORIA CASTRO TORRES, MIGUEL | ) | |
| JESUS DAMIAN PABLO, JHONATAN | ) | |
| ABRAHAM DE LA CRUZ INGARUCA, | ) | |
| MOISES ISAAC ESPINOZA DIONICIO, | ) | Case No.: |
| GIANELLA MAYRA ESPINOZA | ) | |
| GUADALUPE, JOSE LEONIDAS MEJIA | ) | Division No.: |
| RAZA, RONALDO OSCAR RAMOS | ) | |
| RAMOS, JOSSELYN MILAGROS | ) | Personal Injury in Excess of Twenty- Five |
| ROSADO RIVERO, KEVIN CRISTHIAN | ) | Thousand Dollars |
| SALCEDO MORENO, DENZEL | ) | |
| JEREMBY ZEVALLOS PENA, and | ) | JURY TRIAL DEMANDED |
| SISTER KATE REID and MEGAN | ) | |
| HEENEY as Next Friends of  B.V.A.E., | ) | |
| J.V.A.Y., T.J.A.J., T.R.A.B., N.A.B.H., | ) | |
| N.E.B.L., A.S.B.C., F.A.B.L., A.J.B.F., | ) | |
| C.S.C.R., L.A.C.S., A.S.C.R., A.M.C.Q., | ) | |
| L.H.C.R., M.C.C.Q., G.D.C.R., R.M.A.C.J., | ) | |
| B.A.C.Y., L.G.D.C., J.F.S., J.B.F.I., | ) | |
| J.M.G.R., D.E.I.G., N.N.J.A., N.K.L.J., | ) | |
| G.S.L.V., A.A.L.A., A.B.M.J., A.E.M.C., | ) | |
| L.W.N.R., B.X.P.B., S.W.P.B., B.B.Q.C., | ) | |
| N.M.Q.L., N.M.Q.L., R.N.Q.M., T.R.F., | ) | |
| A.M.R.J., L.A.R.C., Y.E.R.S., L.V.R.A., | ) | |
| G.T.R.C., P.B.R.C., G.P.S.J., A.O.S.C., | ) | |
| R.J.S.A., S.Z.S.F., E.J.M.S.A., A.J.S.S., | ) | |
| G.T.S.R., M.J.T.L., N.K.T.R., F.S.V.E., | ) | |
| F.Y.V.Q., A.D.V.C., A.R.V.Q., S.D.V.R., | ) | |
| Y.H.V.G., E.L.V.R., J.P.A.V.A., R.D.V.N., | ) | |
| A.C.Y.P., L.Z.C., J.R.Z.C., Y.A.Z.Y., and | ) | |
| R.Z.Z.; | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| IRA L. RENNERT, individually; as Trustee | ) | |
| and Beneficiary of the IRA LEON | ) | |
| RENNERT REVOCABLE TRUST; and as | ) | |
| Beneficiary of the IRA LEON RENNERT | ) | |
| GRANTOR RETAINED ANNUITY | ) | |
| TRUST NO. 4, the IRA LEON RENNERT | ) | |
| GRANTOR RETAINED ANNUITY | ) | |
| TRUST NO. 5, the IRA LEON RENNERT | ) | |

i

Electronically Filed - City of St. Louis - February 16, 2018 - 05:09 PM

GRANTOR RETAINED ANNUITY          )
TRUST NO. 9, the IRA LEON RENNERT  )
GRANTOR RETAINED ANNUITY          )
TRUST NO. 10, the IRA LEON RENNERT )
GRANTOR RETAINED ANNUITY          )
TRUST NO. 11, the IRA LEON RENNERT )
GRANTOR RETAINED ANNUITY          )
TRUST NO. 2002A, and the IRA LEON  )
RENNERT GRANTOR RETAINED          )
ANNUITY TRUST NO. 2002B,           )
                                   )
  and                    )
                                   )
THE RENCO GROUP, INC.              )
a New York corporation,            )
                                   )
                                   )
  and                    )
                                   )
DOE RUN RESOURCES CORPORATION,     )
a New York corporation,            )
                                   )
  and                    )
                                   )
D.R. ACQUISITION CORP.,            )
a Missouri corporation,            )
                                   )
  and                    )
                                   )
DOE RUN CAYMAN HOLDINGS LLC        )
a Missouri limited liability company, )
                                   )
  and                    )
                                   )
MARVIN K. KAISER,                  )
                                   )
  and                    )
                                   )
ALBERT BRUCE NEIL,                 )
                                   )
  and                    )
                                   )
JEFFERY L. ZELMS,                  )
                                   )
  and                    )
                                   )

Electronically Filed - City of St. Louis - February 16, 2018 - 05:09 PM

| | |
|---|---|
| THEODORE P. FOX III, | ) |
| | ) |
| and | ) |
| | ) |
| | ) |
| ROGER L. FAY, | ) |
| | ) |
| | ) |
| and | ) |
| | ) |
| ALICE KOENIG, individually as Executor | ) |
| of the Estate of MARVIN M. KOENIG, | ) |
| | ) |
| and | ) |
| | ) |
| JOHN A. SIEGEL, JR., | ) |
| | ) |
| and | ) |
| | ) |
| DENNIS A. SADLOWSKI, | ) |
| | ) |
| and | ) |
| | ) |
| JOHN A. BINKO, | ) |
| | ) |
| and | ) |
| | ) |
| MICHAEL C. RYAN, | ) |
| | ) |
| | ) |
| and | ) |
| | ) |
| INGEBORG Rennert, as Trustee of the IRA | ) |
| LEON RENNERT REVOCABLE TRUST, | ) |
| | ) |
| and | ) |
| | ) |
| SAMUEL L. EISENSTAT, as Trustee of the | ) |
| IRA LEON RENNERT REVOCABLE | ) |
| TRUST, the IRA LEON RENNERT | ) |
| GRANTOR RETAINED ANNUITY | ) |
| TRUST NO. 4, the IRA LEON RENNERT | ) |
| GRANTOR RETAINED ANNUITY | ) |
| TRUST NO. 5, the IRA LEON RENNERT | ) |
| GRANTOR RETAINED ANNUITY | ) |
| TRUST NO. 9, the IRA LEON RENNERT | ) |

Electronically Filed - City of St. Louis - February 16, 2018 - 05:09 PM

GRANTOR RETAINED ANNUITY                )
TRUST NO. 10, the IRA LEON RENNERT       )
GRANTOR RETAINED ANNUITY                )
TRUST NO. 11, the IRA LEON RENNERT       )
GRANTOR RETAINED ANNUITY                )
TRUST NO. 2002A, the IRA LEON            )
RENNERT GRANTOR RETAINED                )
ANNUITY TRUST NO. 2002B, the IRA         )
LEON RENNERT 2010 IRREVOCABLE            )
TRUST SUB TRUST F/B/O SARAH              )
TAMARA RENNERT WINN, the IRA             )
LEON RENNERT 2010 IRREVOCABLE            )
TRUST SUB TRUST F/B/O YONINA             )
NECHAMA RENNERT DAVIDSON, the            )
IRA LEON RENNERT 2010                    )
IRREVOCABLE TRUST SUB TRUST              )
F/B/O ARI E.Y.M. RENNERT, the SARAH      )
TAMARA RENNERT WINN GRAT, the            )
YONINA NECHAMA RENNERT                   )
DAVIDSON GRAT, and the ARI E.Y.M.        )
RENNERT GRAT,                            )
                                         )
            and                          )
                                         )
SARAH TAMARA RENNERT WINN, as            )
Trustee and Beneficiary of the IRA LEON  )
RENNERT GRANTOR RETAINED                )
ANNUITY TRUST NO. 4, the IRA LEON        )
RENNERT GRANTOR RETAINED                )
ANNUITY TRUST NO. 5, the IRA LEON        )
RENNERT GRANTOR RETAINED                )
ANNUITY TRUST NO. 9, the IRA LEON        )
RENNERT GRANTOR RETAINED                )
ANNUITY TRUST NO. 10, the IRA LEON       )
RENNERT GRANTOR RETAINED                )
ANNUITY TRUST NO. 11, the IRA LEON       )
RENNERT GRANTOR RETAINED                )
ANNUITY TRUST NO. 2002A, the IRA         )
LEON RENNERT GRANTOR RETAINED            )
ANNUITY TRUST NO. 2002B, the IRA         )
LEON RENNERT 2010 IRREVOCABLE            )
TRUST SUB TRUST F/B/O SARAH              )
TAMARA RENNERT WINN, and the             )
SARAH TAMARA RENNERT WINN                )
GRAT; and as Trustee of the IRA LEON     )
RENNERT REVOCABLE TRUST, the IRA         )

Electronically Filed - City of St. Louis - February 16, 2018 - 05:09 PM

LEON RENNERT 2010 IRREVOCABLE )
TRUST SUB TRUST F/B/O YONINA )
NECHAMA RENNERT DAVIDSON, the )
IRA LEON RENNERT 2010 )
IRREVOCABLE TRUST SUB TRUST )
F/B/O ARI E.Y.M. RENNERT, the )
YONINA NECHAMA RENNERT )
DAVIDSON GRAT, and the ARI E.Y.M. )
RENNERT GRAT, )
                                      )
         and                          )
                                      )
YONINA NECHAMA RENNERT )
DAVIDSON, as Trustee and Beneficiary of )
the IRA LEON RENNERT GRANTOR )
RETAINED ANNUITY TRUST NO. 4, the )
IRA LEON RENNERT GRANTOR )
RETAINED ANNUITY TRUST NO. 5, the )
IRA LEON RENNERT GRANTOR )
RETAINED ANNUITY TRUST NO. 9, the )
IRA LEON RENNERT GRANTOR )
RETAINED ANNUITY TRUST NO. 10, the )
IRA LEON RENNERT GRANTOR )
RETAINED ANNUITY TRUST NO. 11, the )
IRA LEON RENNERT GRANTOR )
RETAINED ANNUITY TRUST NO. )
2002A, the IRA LEON RENNERT )
GRANTOR RETAINED ANNUITY )
TRUST NO. 2002B, the IRA LEON )
RENNERT 2010 IRREVOCABLE TRUST )
SUB TRUST F/B/O YONINA NECHAMA )
RENNERT DAVIDSON, and the YONINA )
NECHAMA RENNERT DAVIDSON )
GRAT; and as Trustee of The IRA LEON )
RENNERT REVOCABLE TRUST, the IRA )
LEON RENNERT 2010 IRREVOCABLE )
TRUST SUB TRUST F/B/O SARAH )
TAMARA RENNERT WINN, the IRA )
LEON RENNERT 2010 IRREVOCABLE )
TRUST SUB TRUST F/B/O ARI E.Y.M. )
RENNERT, the SARAH TAMARA )
RENNERT WINN GRAT, and the ARI )
E.Y.M. RENNERT GRAT, )
                                      )
         and                          )
                                      )

Electronically Filed - City of St. Louis - February 16, 2018 - 05:09 PM

ARI E.Y.M RENNERT, as Trustee and                )
Beneficiary of the IRA LEON RENNERT              )
GRANTOR RETAINED ANNUITY                         )
TRUST NO. 4, the IRA LEON RENNERT                )
GRANTOR RETAINED ANNUITY                         )
TRUST NO. 5, the IRA LEON RENNERT                )
GRANTOR RETAINED ANNUITY                         )
TRUST NO. 9, the IRA LEON RENNERT                )
GRANTOR RETAINED ANNUITY                         )
TRUST NO. 10, the IRA LEON RENNERT               )
GRANTOR RETAINED ANNUITY                         )
TRUST NO. 11, the IRA LEON RENNERT               )
GRANTOR RETAINED ANNUITY                         )
TRUST NO. 2002A, the IRA LEON                     )
RENNERT GRANTOR RETAINED                         )
ANNUITY TRUST NO. 2002B, the IRA                 )
LEON RENNERT 2010 IRREVOCABLE                    )
TRUST SUB TRUST F/B/O ARI E.Y.M.                 )
RENNERT, and the ARI E.Y.M. RENNERT              )
GRAT; and as Trustee of the IRA LEON             )
RENNERT REVOCABLE TRUST, the IRA                 )
LEON RENNERT 2010 IRREVOCABLE                    )
TRUST SUB TRUST F/B/O SARAH                      )
TAMARA RENNERT WINN, the IRA                     )
LEON RENNERT 2010 IRREVOCABLE                    )
TRUST SUB TRUST F/B/O YONINA                     )
NECHAMA RENNERT DAVIDSON, the                    )
SARAH TAMARA RENNERT WINN                        )
GRAT, and the YONINA NECHAMA                     )
RENNERT DAVIDSON GRAT,                           )
                                                 )
      Defendants.            )
                                                 )
                                                 )
                                                 )

## PETITION FOR DAMAGES – PERSONAL INJURY

COME NOW Plaintiffs, and for their Petition against Defendants state:

1.      This is an action to seek recovery from Defendants for injuries, damages, and

losses suffered by each and every plaintiff named herein caused by exposures to lead and other

toxic substances as a result of Defendants' ownership, use, management, supervision, storage,

Electronically Filed - City of St. Louis - February 16, 2018 - 05:09 PM

maintenance, disposal, and release of materials from a metallurgical complex in the region of La Oroya, Peru ("Complex" or "La Oroya Complex").

## THE PLAINTIFFS

2.     The Plaintiffs are individuals who were minors at the time of their initial exposures and injuries. At critical times during gestation and/or their developmental years and to the present, Plaintiffs were exposed to damaging levels of lead and other toxic substances, including but not limited to arsenic, cadmium, and sulfur dioxide, as a result of Defendants' acts and/or omissions related to their ownership and/or operation of the La Oroya Complex.

3.     The health effects of lead poisoning are well known. Lead impacts nearly every organ and system of the human body and is not safe at any level. Lead causes a multitude of serious injuries, including physical, psychological, and behavioral injuries.

4.     Sulfur dioxide, another pollutant emitted at an excessive level from the La Oroya Complex, damages the circulatory and respiratory systems, increases mortality, and is linked to lung cancer, especially when present along with elevated levels of particulate matter, as is the case in La Oroya.

5.     Various public health organizations have performed studies in La Oroya and have concluded that the toxic exposures suffered by its residents, particularly minors, constitute a public health emergency.

6.     For example, starting around 2005, the Saint Louis University School of Public Health in Saint Louis, Missouri, has performed ongoing studies to assess the health effects of environmental contamination produced by Defendants' La Oroya Complex and to determine the extent of toxic metal exposure suffered by La Oroya residents. The study performed by Saint

Electronically Filed - City of St. Louis - February 16, 2018 - 05:09 PM

Louis University shows that over 99 percent of children in La Oroya have blood lead levels that are known to be associated with permanent injuries.

7.     The Saint Louis University study also shows that the residents of La Oroya have been exposed to other toxic substances caused by the La Oroya Complex, including cadmium, arsenic, and antimony, at dangerous and toxic levels. Cadmium and arsenic are known carcinogens and antimony can cause injuries to the lung (including cancer), liver, and heart, and vision problems.

8.     These and other public health experts have confirmed the gravity of the public health situation caused by Defendants' La Oroya Complex, concluding that the public health crisis in La Oroya poses serious health risks for all population groups, and especially for the most vulnerable groups, such as infants and young children – including the Plaintiffs.

9.     Plaintiffs' damages and losses include, but are not limited to: physical and psychological injuries, behavioral and learning impairments, and other permanent disabilities; pain, mental anguish, emotional distress; the cost of medical, educational, and rehabilitation expenses and other expenses of training and assistance; and loss of earnings, income, and earning capacity.

**THE DEFENDANTS**

10.     Defendant Ira L. Rennert ("Rennert") is domiciled in the City of New York, State of New York. At all times relevant hereto, Defendant Rennert is and was the controlling owner of all corporate Defendants, serving in numerous capacities, including the following:

    a.     Defendant The Renco Group, Inc.: president, director, officer, agent, and chairman of the board;

Electronically Filed - City of St. Louis - February 16, 2018 - 05:09 PM

b.   Defendants DR Acquisition Corp. and Doe Run Resources Corporation: sole

director, chairman of the board, officer, and agent;

c.   Doe Run Cayman Holdings, LLC: officer, agent, and chairman;

d.   Trustee and beneficiary of the Ira Leon Rennert Revocable Trust (the "Revocable

Trust"), a trust organized under the laws of New York and, upon information and

belief, administered in the State of New York; and

e.   Beneficiary of the Ira Leon Rennert Grantor Retained Annuity Trust Nos. 4, 5, 9,

10, 11, 2002A, and 2002B (collectively, the "Ira Rennert GRATs"), trusts

organized under the laws of New York and, upon information and belief,

administered in the state of New York.

11.    At all relevant times hereto, Defendant Rennert has and does control the other

corporate defendants and their subsidiaries, including the La Oroya Complex, by virtue of his

direct and indirect ownership of the majority of the stock of Renco, Renco's status as the sole

member of Doe Run Resources, and Renco's direct or indirect ownership of all issued and

outstanding equity interests in the corporate defendants and their subsidiaries.

12.    Defendant Ingeborg Rennert is an individual who, upon information and belief, is

domiciled in the State of New York.  Mrs. Rennert is Rennert's wife and is a Trustee of the

Revocable Trust.

13.    Defendant Samuel L. Eisenstat is an individual who, upon information and belief,

is domiciled in the State of New York.  Mr. Eisenstat is a Trustee of the following Trusts:

a.   the Revocable Trust;

b.   the Ira Rennert GRATs;

c.   the Ira Leon Rennert 2010 Irrevocable Trust Sub Trust F/B/O Sarah Tamara

Electronically Filed - City of St. Louis - February 16, 2018 - 05:09 PM

Rennert Winn (the "Tamara Rennert 2010 Sub-Trust"), a trust organized under

the laws of New York and, upon information and belief, administered in the State

of New York;

d.  the Ira Leon Rennert 2010 Irrevocable Trust Sub Trust F/B/O Yonina Nechama

Rennert Davidson (the "Yonina Rennert 2010 Sub-Trust"), a trust organized

under the laws of New York and, upon information and belief, administered in the

State of New York;

e.  the Ira Leon Rennert 2010 Irrevocable Trust Sub Trust F/B/O Ari E.Y.M. Rennert

(the "Ari Rennert 2010 Sub-Trust," and collectively with the Tamara Rennert

2010 Sub-Trust and the Yonina Rennert 2010 Sub-Trust, the "Rennert Children

2010 Sub-Trusts"), a trust organized under the laws of New York and, upon

information and belief, administered in the State of New York;

f.  the Sarah Tamara Rennert Winn GRAT f/k/a Trusts F/B/O Sarah Tamara Rennert

Winn under the Ira Leon Rennert Grantor Retained Annuity Trust Nos. 1, 2, and 3

(the "Tamara Rennert GRAT"), a trust organized under the laws of New York

and, upon information and belief, administered in the State of New York;

g.  the Yonina Nechama Rennert Davidson GRAT f/k/a Trusts F/B/O Yonina

Nechama Rennert Davidson under the Ira Leon Rennert Grantor Retained

Annuity Trust Nos. 1, 2, and 3 (the "Yonina Rennert GRAT"), a trust organized

under the laws of New York and, upon information and belief, administered in the

State of New York; and

h.  the Ari E.Y.M. Rennert GRAT f/k/a Trusts F/B/O Ari E.Y.M. Rennert under the

Ira Leon Rennert Grantor Retained Annuity Trust Nos. 1, 2, and 3 (the "Ari

Electronically Filed - City of St. Louis - February 16, 2018 - 05:09 PM

Rennert GRAT," and collectively with the Tamara Rennert GRAT and the Yonina Rennert GRAT, the "Rennert Children GRATs"), a trust organized under the laws of New York and, upon information and belief, administered in the State of New York.

14.   Defendant Sarah Tamara Rennert Winn is an individual who, upon information and belief, is domiciled in the State of New York.  Tamara Rennert is Rennert's daughter and a trustee and/or beneficiary of the following Trusts:

    a.   Trustee of the Revocable Trust;

    b.   Trustee and beneficiary of the Ira Rennert GRATs;

    c.   Trustee of the Rennert Children 2010 Sub-Trusts;

    d.   Trustee of the Rennert Children GRATs;

    e.   Trustee and beneficiary of the Tamara Rennert 2010 Sub-Trust; and

    f.   Trustee and beneficiary of the Tamara Rennert GRAT.

15.   Defendant Yonina Nechama Rennert Davidson is an individual who, upon information and belief, is domiciled in the State of New York.  Yonina Rennert is Rennert's daughter and a trustee and/or beneficiary of the following Trusts:

    a.   Trustee of the Revocable Trust;

    b.   Trustee and beneficiary of the Ira Rennert GRATs;

    c.   Trustee of the Rennert Children 2010 Sub-Trusts;

    d.   Trustee of the Rennert Children GRATs;

    e.   Trustee and beneficiary of the Yonina Rennert 2010 Sub-Trust; and

    f.   Trustee and beneficiary of the Yonina Rennert GRAT.

16.   Defendant Ari E.Y.M. Rennert is an individual who, upon information and belief,

Electronically Filed - City of St. Louis - February 16, 2018 - 05:09 PM

is domiciled in the State of New York.  Ari Rennert is Rennert's son and a trustee and/or beneficiary of the following Trusts:

    a.   Trustee of the Revocable Trust;

    b.   Trustee and beneficiary of the Ira Rennert GRATs;

    c.   Trustee of the Rennert Children 2010 Sub-Trusts;

    d.   Trustee of the Rennert Children GRATs;

    e.   Trustee and beneficiary of the Ari Rennert 2010 Sub-Trust; and

    f.   Trustee and beneficiary of the Ari Rennert GRAT.

17.    Rennert established the Revocable Trust, Ira Rennert GRATs, Rennert Children 2010 Sub-Trusts, and Rennert Children GRATs (collectively, the "Trusts") for the benefit of himself and members of his family.  The Trusts collectively own 100% of Defendant The Renco Group.

18.    Defendant Renco Group, Inc. ("Renco") is and at all times relevant herein has been a New York corporation with its principal place of business in New York. Renco is owned by Defendants Rennert and the Trusts. At all relevant times hereto, Renco has been a direct or indirect owner of all corporate Defendants and their subsidiaries. The Renco Group is a Subchapter S corporation and, as such, its profits and losses are attributed to its owners for income tax purposes.

19.    At all relevant times hereto, all corporate defendants and their subsidiaries have been directly or indirectly owned by Defendant Renco, which is directly and indirectly owned by Defendant Ira Leon Rennert, Renco's Chairman and Chief Executive Officer, through the Trusts he established for himself and members of his family.

Electronically Filed - City of St. Louis - February 16, 2018 - 05:09 PM

20.     Defendant DR Acquisition Corporation ("DR Acquisition") is and at all times relevant hereto was a Missouri corporation with its principal place of business in Missouri. At all relevant times hereto, Defendant Renco has been the direct owner of Defendant DR Acquisition. DR Acquisition owns 100% of Defendant Doe Run Resources Corporation.

21.     Defendant The Doe Run Resources Corporation ("Doe Run Resources") is and at all times relevant hereto has been a New York corporation with its principal place of business in Missouri. Doe Run Resources is an international natural resource company based in St. Louis, Missouri, which focuses on the mining, smelting, recycling, and fabrication of metals and is the second largest total lead producer in the world, reporting profits in the hundreds of millions of dollars. At all relevant times hereto, 100% of Doe Run Resources has been owned by DR Acquisition, which is wholly owned by Renco, which is directly and indirectly owned by Rennert and the Trusts. Defendants Rennert and the Trusts are therefore the indirect owner of Doe Run Resources. From Defendants' acquisition of the La Oroya Complex in 1997 through approximately 2007, Doe Run Resources wholly owned Doe Run Cayman, Ltd. ("DR Cayman"), which at all times directly or indirectly held Doe Run Peru, S.R.L. ("DRP").

22.     On or about March 2007, Defendant DR Acquisition formed Defendant Doe Run Cayman Holdings, LLC ("Cayman Holdings"), a Missouri limited liability company with its principal place of business in Missouri, for the sole purpose of "holding" DR Cayman, which has directly or indirectly held DRP during all relevant times herein. From the date of its formation in 2007 to the present, Defendant Cayman Holdings has had no operations separate from "owning" DR Cayman Ltd., and thereby indirectly "owning" DRP.

23.     Rennert, individually or through the Trusts created by him, controls Renco, Doe Run Resources, and all of their subsidiaries, including DRP.  As stated by Doe Run Resources'

Electronically Filed - City of St. Louis - February 16, 2018 - 05:09 PM

2001 Annual Report to the Securities and Exchange Commission:

> All of [Doe Run Resources'] issued and outstanding capital stock is indirectly owned by [Renco]. Renco is owned by [the Trusts] established by Mr. Ira Leon Rennert, Renco's Chairman and Chief Executive Officer, for himself and members of his family. As a result of such ownership, Mr. Rennert controls [Doe Run Resources] and its subsidiaries. [Doe Run Resources] owns 100% of [DR Cayman], a Cayman Islands corporation. [DR Cayman] owns in excess of 99% of the interest in [DRP], with a *DE MINIMIS* number of shares owned by employees of both [DRP] and Empresa Minera del Centro del Peru S.A. (Centromin) pursuant to Peruvian law. Centromin is the Peruvian government entity whose subsidiary held the assets and liabilities of La Oroya, which was purchased on October 23, 1997 by Doe Run Peru.

24.     At all relevant times, the corporate defendants and their subsidiaries have had overlapping officers and corporate executives, with several individuals serving as directors, board members, and officers, while also having been authorized with powers of attorney for these corporate Defendants; for example: Defendants Rennert, Fay, Siegel, Sadlowski, and Ryan have served simultaneously as directors and officers of Renco, Doe Run Resources, DR Acquisition, DR Cayman, and Cayman Holdings; Defendants Neil and Fox have both served simultaneously as officers of DR Acquisition, Doe Run Resources, DR Cayman, and Cayman Holdings, with Neil also serving as an officer of DRP. Still more individuals have held overlapping roles as officers and directors of these corporate entities, often concurrently holding multiple titles within each company.

25.     Defendant Marvin K. Kaiser is currently domiciled in the City of Mayfield, State of Kentucky, and during the times relevant to this action, was domiciled in the City of St. Louis, State of Missouri. At relevant times, Defendant Kaiser was an officer and agent of Doe Run Resources, DR Acquisition, Cayman Holdings, DRP, and Doe Run Mining ("DRM"), including holding such positions as: Chief Financial Officer (CFO), Vice President of Finance, Chief Administrative Officer, and Executive Vice President of Doe Run Resources; and Finance

Manager of both of Defendants' Peruvian subsidiaries, DRM and DRP. Defendant Kaiser was also granted special powers and power of attorney to act in Peru on behalf of Defendants.

26.     Defendant Albert Bruce Neil is domiciled in the City of Kirkwood, State of Missouri. At relevant times, Defendant Neil has been an officer and agent of Doe Run Resources, DR Acquisition, DR Cayman, Cayman Holdings, DRM, and DRP, including serving in the following positions for Doe Run Resources:  Chief Executive Officer (CEO), Operations Manager, General Manager, Vice President of Peru Operations, and President; and also serving at relevant times as President of DRP, Cayman Holdings, and DR Cayman.

27.     Defendant Jeffrey L. Zelms is domiciled in the City of Camdenton, State of Missouri. At relevant times, Defendant Zelms was an officer and agent of Defendant Doe Run Resources and its subsidiaries, including serving in such roles as:  President, CEO, and Vice Chairman of Doe Run Resources; Defendant Zelms was granted special powers and the power of attorney to act in Peru on behalf of Defendants; and Defendant Zelms also served as consultant to Doe Run Resources and its subsidiaries.

28.     Defendant Theodore P. Fox III is domiciled in the City of Clayton, State of Missouri. Defendant Fox has been an officer and agent of Doe Run Resources, DR Acquisition, DR Cayman, and Cayman Holdings, including serving in such roles as:  Vice President of Finance for Doe Run Resources, DR Acquisition, DR Cayman, and Cayman Holdings; CFO of DR Acquisition and Doe Run Resources; and Treasurer of DR Acquisition and Cayman Holdings.

29.     Defendant Roger L. Fay is domiciled in New York. At relevant times, Defendant Fay was a director, officer, and agent of Renco and an officer and agent DR Acquisition, DR Cayman, Cayman Holdings, and DRM, serving in such roles as: Vice President of Renco, DR

Electronically Filed - City of St. Louis - February 16, 2018 - 05:09 PM

Acquisition, Doe Run Resources, DR Cayman, and Cayman Holdings; and Treasurer and

Director of Renco. Defendant Fay also has served as an Authorized Officer of Doe Run

Resources, with the Power of Attorney to act in Peru on behalf of these Defendants. Defendant

Fay also served in the capacity of Vice President for as many as 48 additional companies owned

by Defendant Rennert, including, for example, AM General Corporation, Magnesium

Corporation of America, Renco Steel, Fabricated Products, and Renco Holdings, among others.

     30.    Defendant the Estate of Marvin M. Koenig (hereinafter "Defendant Koenig") is

deemed to be domiciled in New York. At relevant times, Marvin Koenig was a director, officer,

and agent of Renco and an officer and agent of Doe Run Resources, including, among other

roles, serving as Executive Vice President of New Business for Renco and Vice President of

Renco. Marvin Koenig was also granted special Powers of Attorney to act in Peru on behalf of

Doe Run Resources and Renco, as well as being granted Special Powers by DRP to represent the

company.  Koenig was also the signatory on behalf of Defendant Renco in the acquisition of the

Complex in Peru.

     31.    Defendant John A. Siegel is domiciled in New York. At relevant times, Defendant

Siegel was an officer and agent of Renco, DR Acquisition, Doe Run Resources, DR Cayman,

and Cayman Holdings, including serving as, among other roles:  Vice President of Accounting

for Renco, as well as Vice President generally of Corporate Defendants Renco, Doe Run

Resources, DR Acquisition, DR Cayman, and Cayman Holdings; Defendant Siegel also served

as Vice President for as many as 48 additional companies owned by Defendant Rennert,

including, for example, AM General Corporation, Magnesium Corporation of America, Renco

Steel, Fabricated Products, and Renco Holdings; and Defendant Siegel was granted power of

attorney to act in Peru on behalf of Renco and DR Cayman, and also was granted special powers

Electronically Filed - City of St. Louis - February 16, 2018 - 05:09 PM

to act on behalf of and to represent DRP.

32.    Defendant Dennis A. Sadlowski is domiciled in Connecticut. At relevant times, Defendant Sadlowski has served as a director and/or an officer and agent of all Corporate Defendants and their subsidiaries, serving in such capacities as: Vice President of Law of Renco and Vice President of DR Cayman; Secretary of Defendants Renco, DR Acquisition, Doe Run Resources, and Cayman Holdings; and Assistant Secretary of Renco, DR Acquisition, and Doe Run Resources. Defendant Sadlowski also was granted power of attorney to act in Peru on behalf of both Defendant Renco and Defendant Doe Run Resources, and also was granted Power of Attorney for both DRM and DRP. Defendant Sadlowski was granted special powers for DRP, including being authorized to act on behalf of DRP with regard to financial matters. In these capacities, Defendant Sadlowski was responsible for overseeing all legal matters involving corporate Defendants and their involvement in the acquisition of the Complex in Peru. Additionally, Defendant Sadlowski also served as an officer with the title Assistant Secretary for as many as 48 additional companies owned by Defendant Rennert and not parties to this action, including for example AM General Corporation, Magnesium Corporation of America, Renco Steel, Fabricated Products, and Renco Holdings.

33.    Defendant John A. Binko is domiciled in New York. At relevant times, Defendant Binko was an officer and agent of Renco, DR Acquisition, DR Cayman, and Cayman Holdings, including serving as, among other roles, Vice President of Renco, DR Acquisition, and DR Cayman.

34.    Defendant Michael C. Ryan is domiciled in New York. At relevant times, Defendant Ryan was an officer and agent of The Renco Group, DR Acquisition, Doe Run Resources, DR Cayman, and Cayman Holdings, including serving as, among other roles: Renco

Electronically Filed - City of St. Louis - February 16, 2018 - 05:09 PM

General Counsel and Assistant Secretary for Defendants Renco, DR Acquisition, Doe Run Resources, DR Cayman, and Cayman Holdings, as well as for 48 additional companies owned by Defendant Rennert, including for example AM General Corporation, Magnesium Corporation of America, Renco Steel, Fabricated Products, and Renco Holdings. Defendant Ryan also was granted power of attorney to act in Peru on behalf of Renco, Doe Run Resources, and DR Cayman, as well as being granted Power of Attorney for DRM and DRP.

## JURISDICTION AND VENUE

35.    Jurisdiction and venue are proper in this Court. The acts and omissions complained of in this action occurred in this State by Defendants and employees and officers of the corporate defendants, all acting within the course and scope of their agency and employment in this state. Venue is proper pursuant to § 508.010 RSMo (2005), as affirmed by the Missouri Supreme Court in *State ex rel. the Doe Run Resources Corp., et al., v. The Honorable Steven R. Ohmer*, No. SC91265 (Mo. Dec. 2010).

## FACTS COMMON TO ALL COUNTS
### Defendants' Acquisition of the La Oroya Complex

36.    In 1997, Defendants caused three companies to be formed for the purposes of acquiring the La Oroya Complex: DR Cayman, a Cayman Islands holding company, and two Peruvian entities, DRM and DRP. These companies have at all relevant times been owned by one or more corporate defendant, directly or through a series of wholly-owned subsidiaries.

37.    DR Cayman is a Cayman Islands company which was created for the sole purpose of holding these Defendants' Peruvian operations, including DRP. At all relevant times, DR

Electronically Filed - City of St. Louis - February 16, 2018 - 05:09 PM

Cayman has been the holding company and indirect or direct parent of DRP. DR Cayman has not at any time had any business purpose and or operations separate from indirectly or directly owning DRP. At all relevant times, Defendant Rennert has been sole director and chairman of DR Cayman.

38.    On October 23, 1997, Defendants caused DRP to acquire substantially all shares of stock in, and therefore ownership of, the La Oroya Complex.

39.    From October 23, 1997 through approximately June 2001, DRP was directly owned by DRM, which was directly owned by DR Cayman, which was wholly and directly owned by Defendant Doe Run Resources, which was wholly and directly owned by Defendant DR Acquisition, which was wholly and directly owned by Defendant Renco (and Defendants Rennert and the Trusts).

40.    Effective on or about June 1, 2001, Defendants caused DRM to merge into DRP, and DRM was dissolved without liquidation. As such, from approximately June 2001 through the present, DR Cayman directly owned DRP.

41.    From approximately 2001 to 2007, DRP was directly owned by DR Cayman, which was wholly and directly owned by Defendant Doe Run Resources, which was wholly and directly owned by Defendant DR Acquisition, which was wholly and directly owned by Defendant Renco. Therefore, at all times from approximately 1997 to 2007, Defendants Doe Run Resources, Renco, Rennert, and the Trusts have indirectly owned DRP and the La Oroya Complex through the holding company DR Cayman.

42.    DR Cayman was a wholly-owned subsidiary of Defendant Doe Run Resources, which was then owned by Defendant DR Acquisition. At all relevant times, Defendant Renco, owned by Defendants Rennert and the Trusts, wholly owned DR Acquisition. Therefore, at all

Electronically Filed - City of St. Louis - February 16, 2018 - 05:09 PM

times from the formation of DRP through approximately June 2001, Defendants Doe Run Resources, Renco, Rennert, and Trusts indirectly owned DRP and the La Oroya Complex.

43.     Through a series of transactions referred to as the "February 8, 2007 Transactions" (which transpired in February and March of 2007), the Defendants caused the reorganization of various corporate defendants and their subsidiaries, with the purpose of transferring ownership of DRP and its parent company DR Cayman from Defendant Doe Run Resources to Defendant Cayman Holdings, a Missouri holding company wholly-owned by Defendant Renco with no business purpose other than owning DR Cayman and its subsidiary DRP.  As such, as of approximately February 2007, DRP ceased to be an indirect subsidiary of Defendant Doe Run Resources, and thereafter became more tightly held by Defendant Renco with only one intermediary holding company, DR Acquisitions.

44.     From March 2007 through the present, Defendant Renco has wholly owned Defendant Cayman Holdings, Cayman Holdings has wholly owned DR Cayman, and DR Cayman has wholly owned DRP.[1] Therefore, Defendants Renco, Rennert, and the Trusts have indirectly owned the La Oroya Complex through their ownership of the holding company DR Cayman, throughout all relevant times herein.

**Intercompany Agreements**

45.     Upon acquisition of the La Oroya Complex and thereafter, Defendant Doe Run Resources entered into various contracts and intercompany agreements with its Peruvian subsidiaries to perform the managerial and operational activities for the La Oroya Complex.

46.     Defendant Renco simultaneously maintained intercompany agreements with Doe Run Resources and Cayman Holdings to provide management, insurance, and tax filing on

---

[1] A *de minimus* number of DRP's shares are owned by its employees, as required by Peruvian law.

Electronically Filed - City of St. Louis - February 16, 2018 - 05:09 PM

behalf of Doe Run Resources and Cayman Holdings and their subsidiaries for a fee.

<u>Intercompany agreements between Defendant Doe Run Resources and its Subsidiaries</u>

47.     At all relevant times herein, Defendant Doe Run Resources provided all services necessary to operate and manage the La Oroya Complex, whether directly through intercompany agreements with DRP, indirectly through intercompany agreements with DRM, or merely by assuming and/or undertaking to perform those obligations and responsibilities.

48.     More specifically, Doe Run Resources initially contracted directly with DRP, executing service agreements whereby DRP would pay Doe Run Resources fees to manage and operate the La Oroya Complex, to provide staffing and equipment for the La Oroya Complex, and to perform professional, technical, hedging and sales services for the La Oroya Complex.

49.     Later, DRM became an intermediary contracting party between DRP and Doe Run Resources, whereby DRM executed agreements with DRP to provide all services pertaining to the management and operation of the La Oroya Complex. In these agreements, DRM warranted that it had the experience and the expertise needed to perform such services and assumed responsibility for the execution of all such services done by its personnel or persons designated to carry out those services on DRM's behalf.

50.     The same individual (Kenneth Buckley, a VP of Doe Run Resources who was also named General Manager of DRM and DRP) signed on behalf of both DRM and DRP in these agreements.

51.     On information and belief, DRM performed no services. Rather, DRM simultaneously retained Doe Run Resources to provide those services to DRP in its stead. More

Electronically Filed - City of St. Louis - February 16, 2018 - 05:09 PM

specifically, on the very same day it executed the agreements with DRP, DRM entered into various agreements with Doe Run Resources for the provision of all services necessary to operate and manage the La Oroya Complex for additional "service fees."

52.     The intercompany agreements that Doe Run Resources executed include warranties regarding the standards of performance, including, for example, that Defendant Doe Run Resources will perform services in a professional and competent manner, and/or that services will be provided in substantial compliance with all applicable agreements, laws, rules, orders, and regulations of any applicable governmental or quasi-governmental agency.

53.     On January 1, 2001, six months before DRM merged into DRP and dissolved without liquidation, DRP and DRM contractually agreed to terminate their service agreements. Again, the same individual (Kenneth Buckley) executed the termination of the service agreements, signing on behalf of both DRM and DRP.

54.     Despite the termination of the agreements, Doe Run Resources continued to operate and manage DRP as it had done previously. More specifically, Defendant Doe Run Resources still continued to provide all services directly to DRP that it done previously and for which it assumed responsibility, ostensibly pursuant to its intercompany service agreements with DRM.

55.     Among the actions that Defendant Doe Run Resources performed in its operation and management of the La Oroya Complex, were the following:

    a.  Providing staffing and equipment;

    b.  Performing professional, managerial, technical, hedging, and sales services;

    c.  Managing day-to-day operations, including those pertaining to human resources, payroll, employee incentives programs, company organization, logistics, etc.;

Electronically Filed - City of St. Louis - February 16, 2018 - 05:09 PM

d.  Managing manufacturing and production, including shipping, purchasing, sales, and transportation;

e.  Managing external operations, including industrial relations, community relations, public relations, and handling political issues;

f.  Managing overall business structure, growth, and strategy, including overseeing business efficiency, growth, and planning;

g.  Coordinating and cooperating with Centromin and other Peruvian governmental entities;

h.  Training metallurgical, managerial, and operational personnel, including in the areas of plant operating systems, critical environmental management, and administration;

i.  Training personnel on handling relationship issues with governmental entities;

j.  Managing and overseeing all financial aspects of operations, including:

(a) Relationships with and engagement of external parties such as banks, leasing and financing service companies, independent accounting firms, auditors, other financial entities, and opening bank accounts and arranging financing;

(b) Internal day-to-day financial issues including managing collections, accounting, inventory, working capital management, import/export documentation, financial allocation, and cash management; overseeing the collections and disbursements from the bank accounts; tax planning and preparation; treasury documentation; and technical support for accounting;

Electronically Filed - City of St. Louis - February 16, 2018 - 05:09 PM

(c) Business-wide and overarching financial planning and structure, including management of debt, financial structure, budgeting, hedging, and auditing systems and controls;

(d) Managing information processing, and managing, overseeing, and controlling company communications, including the design and implementation of all systems related to day-to-day operations involving both:

    1.  External communications, such as customer service, customer management systems, telecommunications and video conferencing; and

    2.  Internal operations, such as data processing, payroll, and the internet;

k.  Controlling all suppliers, designers, fabricators and exporters;

l.  Managing, coordinating, and providing technical assistance for all aspects of DRP operations, including:

(a) Production operations, including metallurgical, materials handling, smelting/refining, research and development programs;

(b) Programs pertaining to the safety of others, including: safety systems, programs for such safety systems, environmental (air, water, and particulate), continuous monitoring, and hygiene; and

(c) Managerial assistance and coordination of construction-related issues, including dealings with outside contractors, for: projects, design, engineering, procurement, progress and completion of same;

Electronically Filed - City of St. Louis - February 16, 2018 - 05:09 PM

m.  Assuming total control of all construction.

56.  In addition to providing the above-described services, Defendant Doe Run Resources expressly assumed responsibility for the La Oroya Complex's emissions and contamination by contracting to:

    a.  Manage and coordinate all aspects of the environmental operations pertaining to air and water contamination and particulate emissions;

    b.  Perform continuous monitoring;

    c.  Manage and oversee cleanup and remediation;

    d.  Train personnel to improve efficiency of operations;

    e.  Manage the handling of materials;

    f.  Provide training related to critical environmental management and administration skills;

    g.  Train personnel in health and safety issues for the express purpose of increasing the health and safety of laborers and the general population in the operations area;

    h.  Manage and coordinate the technical aspects of the operations of the company pertaining to safety systems and programs; and

    i.  Assume total control of all aspects of Construction Management.

57.  Pursuant to these agreements, Defendant Doe Run Resources performed these services in Peru, in Defendant Doe Run Resources' home office in St. Louis, MO, or in other such offices in the US – at Defendant Doe Run Resources' discretion.

<u>Intercompany Agreements between Defendants Renco and Doe Run Resources</u>

58.  Simultaneous to Defendant Doe Run Resources and DRM/DRP contracting for

Electronically Filed - City of St. Louis - February 16, 2018 - 05:09 PM

the provision of services related to the operation of the La Oroya Complex, Defendant Renco contracted with Defendant Doe Run Resources to provide managing and consulting services to Defendant Doe Run Resources and its subsidiaries, while also executing agreements pertaining to tax sharing and the procurement of insurance for Defendant Doe Run Resources and its subsidiaries.

59.     The tax sharing agreement provides that Defendant Doe Run Resources and its subsidiaries, including DRP, calculate their gross tax liabilities and pay that estimated amount plus fees directly to Defendant Renco, without the benefit of reductions due to business losses. Pursuant to the agreement, Defendant Renco files consolidated taxes and retains the right to claim the benefit of any Doe Run Resources or its subsidiaries' business losses (including DRP).

60.     The tax sharing arrangement also allows Defendant Renco to file as an S Corporation, providing and sharing the associated tax benefits to Renco's owners, Defendants Rennert and the Trusts.

61.     Pursuant to the insurance provision agreement between Defendants Doe Run Resources and Renco, Defendant Renco purchases and administers comprehensive insurance policies for Doe Run Resources, DRP, and other corporate defendants for a fee; Defendant Renco purchases these policies at a discounted rate, and the covered entities, including Doe Run Resources and DRP, each reimburse Defendant Renco for their coverage.

62.     Pursuant to the "management" agreements, Defendant Doe Run Resources paid Defendant Renco an annual fee for "management" of itself and its subsidiaries. The original agreement predated Defendants' acquisition of the La Oroya Complex; on or about the time Defendants acquired the La Oroya Complex, Defendant Renco's "management" fee doubled.

Electronically Filed - City of St. Louis - February 16, 2018 - 05:09 PM

63. Defendant Roger Fay signed the original agreement on behalf of Defendant Doe Run Resources, but signed the amended agreement (whereby Defendant Renco's "management" fees are doubled) on behalf of Defendant Renco; Marvin Koenig and Defendant Kaiser were the other signatories on these agreements.

64. In the intercompany "management" agreements, Defendant Renco warrants it is experienced in providing the contracted-for management services.

65. Pursuant to these "management" agreements, Defendant Renco committed to providing to Defendant Doe Run Resources and its subsidiaries the following management services:

    a. Management of production operations, such as those pertaining to products and manufacture, as well as pertaining to the operating plans;

    b. Management of employees and personnel, including with regard to productivity as well as employee benefit programs;

    c. Management of finances, including budgets and forecasts; and

    d. Management of business relationships and transactions, such as those involving negotiations.

66. In related management policies instituted and promulgated by Defendant Rennert, Defendant Rennert mandated that the following actions of Doe Run Resources, DRM, and/or DRP be personally pre-approved by Defendant Rennert, including:

    a. Capital expenditures;

    b. Financing for operations and maintenance;

    c. Budgeting and forecasting;

    d. Business organization and management;

Electronically Filed - City of St. Louis - February 16, 2018 - 05:09 PM

    e.   Any intercompany agreements, transactions, and/or arrangements among or between Defendant Doe Run Resources, DRM, and/or DRP other than or beyond the scope of the above-described service agreements; and

    f.   Employee-related issues, such as employment agreements with, promotions of, and compensation for senior executives.

67.    Additionally, Defendant Rennert dictated that Defendant Doe Run Resources and DRP provide regular and constant reporting on all financial issues, including daily reporting on certain issues at Defendant Rennert's discretion.

68.    Defendant Rennert further asserted control over members' meetings, voting rights, bylaws, business plans, and major corporate transactions, such as those related to mergers, corporate form, name, ownership interest, assets, and acquisitions.

69.    Defendant Rennert also required all lawyers performing work in Peru to coordinate directly with Defendants Rennert's / Renco's attorneys in New York.

<u>Intercompany Agreements between Defendants Renco and Cayman Holdings:</u>

70.    On or about March 2007, following the company restructuring whereby ownership of DRP and its parent DR Cayman were transferred and assigned to Defendant Cayman Holdings, a Missouri corporation and direct subsidiary of Defendant Renco, Defendant Cayman Holdings executed an intercompany agreement with Defendant Renco.

71.    This agreement provides that Defendant Renco would manage the business affairs of Cayman Holdings – which has no operations or business purpose other than the ownership of DR Cayman. DR Cayman, in turn, has no operations or business purpose other than holding DRP.

Electronically Filed - City of St. Louis - February 16, 2018 - 05:09 PM

72.     The agreement further grants Defendant Renco all power to manage and operate the business affairs of Defendant Cayman Holdings, the power and authority to do any and all acts necessary or convenient for the furtherance of its business purposes, and the power and authority to act through any officers and employees and other persons designated by Defendant Renco in carrying out any and all of its powers and authorities.

73.     As such, from 2007 forward, Defendant Renco has held all rights and power to manage and operate DRP and the La Oroya Complex, and therefore, since 2007, Defendant Renco has directly controlled DRP and the La Oroya Complex.

74.     Throughout all relevant times and even after the 2007 restructuring, on information and belief, Defendant Doe Run Resources has managed and operated the La Oroya Complex by, through, and/or under the direct control of Defendants Renco, Rennert, and the Trusts.

## ALLEGATIONS COMMON TO ALL COUNTS

75.     At all relevant times hereto, Defendants used, managed, supervised, maintained, operated, consulted with/for, and/or controlled the properties related to the La Oroya Complex.

76.     At all relevant times hereto, Defendants created, caused, emitted and/or allowed to be emitted, allowed to accumulate, stored, failed to remove, and/or failed to remediate the lead and other hazardous substances in the La Oroya region, and Defendants did so for their own financial benefit.

77.     During the course of their ownership, operation, use, management, supervision, storage, maintenance, and/or control of operations of their metallurgical complex and related properties in La Oroya, Peru, and at all times relevant hereto, the Defendants negligently,

Electronically Filed - City of St. Louis - February 16, 2018 - 05:09 PM

carelessly, and/or recklessly made decisions while located in the States of Missouri and/or New York that caused the release of heavy metals and other toxic and harmful substances into the air and water and onto the properties on which the Plaintiffs have in the past and/or continue to reside, use and visit. The toxic and harmful substances include but are not limited to: lead, arsenic, cadmium, and sulfur dioxide

78.     Defendants' actions and omissions in causing the release of these toxic substances into the surrounding environment, allowing the accumulation of theses toxic substances and resultant contamination of the surrounding environment, and/or failing to remediate the surrounding environment and remove the toxic and harmful substances from the air, water, and ground, and other surfaces has resulted in Plaintiffs' exposure to these toxic and harmful substances.

79.     The activities, operations, and processes conducted at the La Oroya Complex, including mining, smelting, refining, and processing of minerals and heavy metals, involves the release of lead and other toxic and hazardous substances which has long been known to pose health risks to persons exposed. As such, the health risks from exposure were known or should have been known by Defendants.

80.     Defendants had actual knowledge of the harms caused to individuals, including the Plaintiffs, from exposure to the hazardous substances and toxic emissions that resulted from their actions and omissions in their operations and management of the La Oroya Complex, having been engaged in lead poisoning-related personal injury litigation in the City of St. Louis for at least two years prior to the purchase of La Oroya Complex in 1997. Defendants' actual knowledge of such risks of harms is further evidenced by their negotiation of terms pertaining to environmental remediation and reduction of toxic emissions at the La Oroya Complex in their

Electronically Filed - City of St. Louis - February 16, 2018 - 05:09 PM

purchase and acquisition of the metallurgical complex and related facilities in Peru.

81.     Although suitable technologies and processes exist and have existed that would prevent the pollution and contamination caused by Defendants' activities related to operating and managing the metallurgical complex, Defendants have not implemented and/or failed to timely implement such technology at the La Oroya Complex.

82.     Throughout all relevant times herein, Defendant Renco, by and through Defendant Rennert, exerted control over all expenditures of the Doe Run Resources and its subsidiaries, and in particular over any and all expenditures related to DRP operations and modernization or improvement of the Complex. On information and belief, Defendant Rennert, by, through, and together with Defendant Renco continued to and has continued to exert such control before, during, and after the 2007 restructuring and through to today.

83.     Defendant Renco—by and through its agents, servants, and employees who were acting within the course and scope of their employment, service, and agency—owned, operated, and managed the other corporate defendants and their subsidiaries, and continues to do so.  As owner of the other corporate defendants and their subsidiaries, including DRP, Defendant Renco is liable for the activities and the toxic environmental releases from the La Oroya Complex since the date Defendants' purchased the Complex, October 23, 1997.

84.     At all relevant times hereto, Defendants Rennert and the Trusts have controlled the corporate defendants and their subsidiaries by virtue of their ownership of Defendant Renco. As such, since the date of purchase on October 24, 1997, Defendant Rennert and the Trusts are liable for the actions and omissions resulting in the releases of toxic and hazardous substances from the La Oroya Complex and the contamination of the surrounding environment.

85.     As owners and/or operators of the La Oroya Complex, Defendants are liable for

Electronically Filed - City of St. Louis - February 16, 2018 - 05:09 PM

all toxic exposure these Plaintiffs suffered that caused Plaintiffs' injuries herein described, whether the result of Defendants' actions or omissions, since the date of purchase on October 23, 1997.

86.    At relevant times, DRP was an agent of the Defendants. Defendants consented, expressly or impliedly, to DRP acting on their behalf, and DRP was subject to Defendants' exclusive control. Defendants Renco, Rennert, and Doe Run Resources, by and through their agents, together and each of them, had the right to control and did control the operations, storage, generation, handling, disposal, and release of toxic and harmful substances that led to the Plaintiffs' injuries. Such control emanated, upon information and belief, solely from the States of Missouri and New York in the form of decisions, orders, policies and requirements communicated to Defendants' agents in La Oroya, Peru, as well as from Defendants' own direct actions. Through Defendants' control of DRP and/or the La Oroya Complex, whether through indirect ownership or otherwise, DRP is and has been an agent of the corporate defendants, and the corporate defendants are liable for any actions and omissions attributable to DRP and/or the La Oroya Complex.

87.    Defendants, individually, together, and/or in conspiracy with each other, owned, operated, maintained, managed, and/or used the La Oroya Complex and related operations and facilities, and continue to do so in a way that negligently, carelessly, and recklessly generated, handled, stored, released, disposed of, allowed to accumulate, failed to control or contain, and/or failed to remediate the heavy metals and other toxic substances used, emitted, and/or generated by the Complex, resulting in the release of toxic metals and gases and other hazardous substances onto and around the properties on which Plaintiffs, at relevant times in the past and/or currently, have resided, used, visited, and/or attended school. As such, these Defendants' actions

Electronically Filed - City of St. Louis - February 16, 2018 - 05:09 PM

and omissions resulted in the contamination of the locations where Plaintiffs were thereby exposed to toxic and hazardous substances.

88.     Defendants, individually, together, and/or in conspiracy with each other also failed to warn of the dangers of such exposures, purposefully withheld information, and/or deliberately deceived the Plaintiffs with regard to the dangers of such exposures, resulting in Plaintiffs' exposure to toxic and hazardous substances.

89.     Defendants Rennert, the Trusts, Renco, Doe Run Resources, DR Acquisition, and Cayman Holdings have so dominated and controlled the activities and assets of their subsidiaries, including DRP, that they have failed to respect such subsidiaries' separate existence. Rennert, the Trusts, Renco, Doe Run, DR Acquisition, and Cayman Holdings are or were DRP's alter egos. Defendants Rennert, the Trusts, Renco, Doe Run Resources, DR Acquisition, and Cayman Holdings are liable for the acts and omissions of DRP.

90.     Defendant Rennert controls the Trusts, Renco, Doe Run Resources, DR Acquisition, Cayman Holdings, and their subsidiaries, including DRP, as if they were one entity. The Trusts, Renco, Doe Run Resources, DR Acquisition, Cayman Holdings, and such subsidiaries are alter egos of Defendant Rennert and of each other. Defendant Rennert, the Trusts, and the corporate Defendants are liable for the acts and omissions of DRP.

91.     Defendant Renco's corporate status was dissolved from December 31, 2003 to August 10, 2004. Despite such dissolution, the shareholders, officers, and directors of Defendant Renco Group continued to operate as a corporation, continued to act as DRP's alter ego, and continued to cause the release of toxic substances from the La Oroya Complex.

92.     During the period of dissolution, Defendants Rennert, Fay, and Sadlowski served as directors of the Renco Group; Defendants Rennert, , Fay, Siegel, Sadlowski, Binko, and Ryan

Electronically Filed - City of St. Louis - February 16, 2018 - 05:09 PM

and Marvin Koenig served as officers of the Renco Group; and the Trusts owned 100% of the shares of Renco Group.

93.     The shareholders, officers, and directors of Renco Group, including Defendants Rennert, Koenig, Fay, Siegel, Sadlowski, Binko, Ryan, and the Trusts are personally liable for the tortious acts committed by and harms caused by the Renco Group during the period of dissolution.

94.     At all times, Defendants were acting by and through their partners, subsidiaries, agents, servants, and employees who were acting within the scope of their partnership, agency, or employment and in conspiracy with each other.

95.     Each of the corporate Defendants owned, operated, used, managed, supervised, and/or controlled the La Oroya Complex and related operations and facilities in La Oroya and/or was a partner in or the legal and beneficial owner of the partnership interest in a general partnership known as the Doe Run Company, which is a fictitious name used by the partnership. As owners, operators and/or partners in the Doe Run Company, the corporate Defendants are jointly and severally liable for acts and releases related to the La Oroya Complex and related operations and facilities.

96.     Some or all of the corporate Defendants, pursuant to various written agreements, including the various intercompany service and management agreements, expressly or impliedly assumed liabilities arising out of the operation of the La Oroya Complex and related operations and facilities since October 23, 1997.

97.     In addition and alternatively, all of the Defendants acted jointly and in conspiracy with each other. The objectives of the conspiracy included: the failure to adequately control the emissions and/or remediate accumulated contamination from various facilities related to

Electronically Filed - City of St. Louis - February 16, 2018 - 05:09 PM

Defendants' metallurgical complex, which Defendants knew was being released from or transported to the surrounding environment including the properties on which Plaintiffs have previously or currently resided, used, visited, and/or attended school; the failure to implement adequate pollution controls at various facilities related to Defendants' metallurgical complex; and/or the purposeful concealment of information of information pertaining to, the deliberate deception of Plaintiffs with regard to, and/or the failure to warn Plaintiffs of the dangers of such exposures.

98.    These actions and omissions were committed by Defendants and their agents with the purpose of reducing cost and increasing profits, bonuses, stock value, wages, and stock options of Doe Run as well as the corporate Defendants.

99.    The corporate Defendants, under the control and domination of Defendants Rennert and the Trusts, while located in the States of Missouri and/or New York, have exerted complete control, not merely stock control, but complete domination of finances, policies, and business practices of DRP and the La Oroya Complex. The control is so complete that the subsidiary has never had a separate mind, will, or existence of its own.

100.    Due to their ownership and/or undue exercise of control over DRP, Renco and Doe Run Resources—under the control and domination of Rennert and the Trusts—directed and controlled the management and policies of DRP, including mergers, debt transactions, designation of DRP's officers and management level employees, environmental expenditures, production practices, uses of technology that would limit emissions, environmental policies, public relations policies, decisions regarding warnings given to Plaintiffs, and other corporate activities which, but for this control, would have been conducted by DRP.. Such control has proximately caused the Plaintiffs' injuries.

Electronically Filed - City of St. Louis - February 16, 2018 - 05:09 PM

101.     Due to their ownership and/or undue exercise of control over DRP, Renco and Doe Run Resources—under the control and domination of Rennert and the Trusts—caused DRP to make excessive financial payments to its parent corporations, directly and indirectly, under intercompany agreements and otherwise; to guarantee high levels of debt incurred by its parent corporations; to make debt payments to and on behalf of its parent corporations; and to incur significant amounts of debt.  Defendants' actions burdened DRP with excessive debt, left DRP with insufficient funds to make necessary environmental improvements, and was a significant cause and/or the driving factor in rendering DRP undercapitalized, insolvent, and ultimately bankrupt.

102.     Upon information and belief, proceeds of the payments made by DRP to its corporate parents, as well as proceeds of the related-party debts guaranteed by DRP, ultimately were used, in whole or in part, to fund payments to Defendants Renco, Rennert, and/or the Trusts.

103.     The above-described incurrences constitute siphoning of DRP's corporate funds by Renco, Doe Run Resources, Rennert, and the Trusts.

104.     These dealings with DRP constitute a pattern of activity engaged in by Rennert with corporations controlled by Rennert and/or the Trusts, whereby the assets of the controlled corporation are transferred out, rendering the controlled subsidiary insolvent and unable to pay its debts.

105.     Defendants exerted their control over DRP to make substantial profit while causing injuries to the Plaintiffs, constituting fraud and injustice in contravention of Plaintiffs' legal rights.

106.     Defendants' actions left DRP with insufficient assets to fund the environmental

Electronically Filed - City of St. Louis - February 16, 2018 - 05:09 PM

improvements necessary to prevent further injury to Plaintiffs, and left DRP bankrupt and

financially unable to compensate Plaintiffs for the injuries caused by the pollutants and

emissions Defendants caused to be emitted from the La Oroya Complex.

107.    As a direct and proximate result of the releases of toxic and harmful substances

from the La Oroya Complex caused by the acts and omissions of these Defendants, Plaintiffs

have suffered injuries, and currently suffer and will continue to suffer damages and losses which

include but are not limited to: physical and psychological injuries, learning and other permanent

disabilities, pain, mental anguish, emotional distress, the loss of household services, the cost of

medical, educational and rehabilitation expenses and other expenses related to training and

assistance, and loss of earnings, income, and earning capacity. Such injuries, damages, and loses

are reasonably likely to continue to occur in the future.

### COUNT I - NEGLIGENCE
**As to Defendants Renco, Doe Run Resources Corporation,
DR Acquisition, Doe Run Cayman Holdings, the Trusts, Rennert,
Fay, Koenig, Siegel, Sadlowski, Binko, and Ryan**

108.    Plaintiffs repeat the allegations contained in Paragraphs 1 through 107 inclusive,

and incorporate them by reference herein.

109.    Defendant Renco, by and through its agents, and Defendants Rennert and the

trusts, together and each of them, and together with and/or through Defendant Doe Run

Resources Corporation and its agents, and together with Defendants DR Acquisition and

Cayman Holdings, while located in the States of Missouri and/or New York, exerted complete

control, not merely stock control, but complete domination of finances, policies, and business

practices of DRP and the La Oroya Complex. Defendants' control was and is so complete that

the subsidiary has never had a separate mind, will, or existence of its own and is and has been a

mere instrumentality of these Defendants.

Electronically Filed - City of St. Louis - February 16, 2018 - 05:09 PM

110.    Defendants' complete domination and total control of DRP and the La Oroya Complex occurred while these Defendants and their agents were in the States of Missouri and/or New York and was the result of these Defendants' actions taken and decisions made while in the States of Missouri and New York.

111.    These Defendants and their agents totally controlled and dominated DRP's expenditures, production practices, use of technology that would limit emissions, and policies including public relations and decision-making policies regarding information given to Plaintiffs.

112.    Because these Defendants and their agents make and have made decisions regarding expenditures, production practices, uses of technology, and policies regarding the operation of the La Oroya Complex, and because of the deliberate withholding of information regarding the dangers of the toxic substances released by the La Oroya Complex, Defendants owe and have owed a duty to Plaintiffs who live in the vicinity of the Complex to control and contain the heavy metals and other toxic substances generated, handled, stored, emitted, and disposed of at the La Oroya Complex and related operations and facilities; to ensure that any such emissions or releases of hazardous substances are within safe and non-toxic levels; to warn and continue to warn Plaintiffs of the release of these toxic and harmful substances; to remediate and clean up any existing contamination; to prevent any further contamination and release of toxic and harmful substances; and thus to prevent these Plaintiffs from being harmed and injured and ensure these Plaintiffs' health and safety.

113.    These Defendants and their agents, together and each of them, and/or in conspiracy with each other, negligently, carelessly, and recklessly generated, handled, stored, released, disposed of, and/or failed to control and contain the metals and other toxic substances used and generated by the Complex, resulting in the release of toxic metals and gases and other

Electronically Filed - City of St. Louis - February 16, 2018 - 05:09 PM

toxic substances onto and around the properties on which Plaintiffs have in the past and/or continue to reside, use and visit, thereby resulting in toxic exposure to Plaintiffs.

114.    These Defendants and their agents, together and each of them, and/or in conspiracy with each other, through their decisions made in the States of Missouri and/or New York and through their agents, also negligently, carelessly, and recklessly failed and continue to fail to warn Plaintiffs of release of the toxic metals and gases and other toxic substances into the environment and community surrounding the La Oroya Complex and related operations and facilities, including the properties on which Plaintiffs have in the past and/or continue to reside, and also failed to warn of the reasonably foreseeable effects of such releases, including the dangers of inhaling or ingesting these toxic metals, gases, and other toxic substances.

115.    These Defendants and their agents, together and each of them, and/or in conspiracy with each other, also purposefully withheld information and/or deliberately deceived the Plaintiffs with regard to the dangers of exposure to the toxic substances released into the environment by the La Oroya Complex and related operations and facilities.

116.    This unjust use of control proximately caused the Plaintiffs' injuries.

117.    These Defendants' and their agents' control that has caused these Plaintiffs' injuries is, was, and has been exerted by Defendants in order to make substantial profit, constituting fraud and injustice that violates the Plaintiffs' legal rights. Moreover, these Defendants' and their agents' control over DRP and the La Oroya Complex and the consequences of same is, was, and has been plainly contrary to the interests of DRP and much to the detriment of DRP, while plainly to the advantage  and benefit of  these Defendants.

118.    These Defendants and their agents, together and each of them, and/or in conspiracy with each other, knew or should have known that the generation, handling, storage,

Electronically Filed - City of St. Louis - February 16, 2018 - 05:09 PM

release and disposal of the above-described heavy metals, harmful gases, and other toxic substances at Defendants' metallurgical complex and related operations and facilities would proximately cause damage to Plaintiffs.

119.    As a direct and proximate result of the releases from the Defendants' properties, operations, and facilities, Plaintiffs have suffered, currently suffer, and will continue to suffer injuries, damages, and losses which include but are not limited to:  physical and psychological injuries, learning and other permanent disabilities, pain, mental anguish, emotional distress, the loss of household services, the cost of medical, educational, and rehabilitation expenses and other expenses of training and assistance, and loss of earnings, income, and earning capacity. Such injuries, damages and losses are reasonably likely to continue to occur in the future.

120.    The actions and omissions in the form of decisions made from the States of Missouri and/or New York by Defendant Renco, and by and through its agents, and Defendant Rennert, together and each of them, and together with and/or through Defendant Doe Run Resources and its agents, and together with Defendants DR Acquisition Corp. and Cayman Holdings, were outrageous due to Defendants' evil motive or reckless indifference to the rights of Plaintiffs, entitling Plaintiffs to an award of punitive damages.

121.    Due to the dissolution of Defendant Renco's corporate status from December 31, 2003 to August 10, 2004, the shareholders, officers, and directors of Renco are also personally liable for the tortious acts committed by, and harms caused by, Renco during such time.

WHEREFORE, Plaintiffs respectfully request judgment to be entered in their favor against the Defendants jointly and severally for:

(a) an amount of damages in such sum as is fair and reasonable to compensate the
    Plaintiffs in an amount in excess of TWENTY FIVE THOUSAND DOLLARS

Electronically Filed - City of St. Louis - February 16, 2018 - 05:09 PM

($25,000);

(b) punitive damages in an amount sufficient to punish and deter the Defendants from

further such conduct;

(c) their costs and expenses;

(d) pre- and post-judgment interest as allowed by statute and law; and

(e) such further relief as the Court deems appropriate.

Electronically Filed - City of St. Louis - February 16, 2018 - 05:09 PM

**COUNT II – NEGLIGENCE**
**As to Defendants Rennert, Kaiser, Neil, Zelms, Fox, Fay,**
**Koenig, Siegel, Sadlowski, Binko, and Ryan**

122.    Plaintiffs repeat the allegations contained in Paragraphs 1 through 107 inclusive, and incorporate them by reference herein.

123.    At all times, Defendant Rennert was and is the Chairman and Chief Executive Officer, as well as President and Director, of Defendant Renco. At all relevant times herein, Defendant Rennert has been and continues to be Chairman and Director of Defendant Doe Run Resources. Defendant Rennert has also served as the sole director of Defendant DR Acquisition and DR Cayman. and Chairman and President of Defendant Cayman Holdings. As such, at all relevant times hereto, Defendant Rennert has been an agent authorized to act and has personally acted and participated in the actions and omissions described herein. Because he had actual knowledge of the tortious wrongful conduct of Renco, Doe Run Resources, and their subsidiaries, and/or because he and participated in such wrongful conduct, Defendant Rennert is personally and individually liable to Plaintiffs for these actions and omissions. This liability is in addition to and independent of any liability based on conspiracy or otherwise alleged herein.

124.    During times relevant herein, Defendant Kaiser was Vice President, Chief Financial Officer, Executive Vice President, and Chief Administrative Officer of Defendant Doe Run Resources and its subsidiaries, including DRP, and was expressly granted Power of Attorney to act on behalf of these Defendants in Peru with regard to DRP and the La Oroya Complex. Defendant Kaiser also was Vice President and Chief Financial Officer of Defendant DR Acquisition and Vice President of DR Cayman Ltd.  Defendant Kaiser is liable to Plaintiffs because he had actual knowledge of the tortious and wrongful conduct of Defendants Doe Run Resources, DR Acquisition, and their subsidiaries and personally participated in it, including in

37

Electronically Filed - City of St. Louis - February 16, 2018 - 05:09 PM

the acts and omissions of Defendants described herein, and is thus liable in his individual capacity.  This liability is in addition to and independent of any liability based on conspiracy.

125.     During times relevant herein, Defendant Neil was the President, Chief Executive Officer, General Manager, and Operations Manager of Defendant Doe Run Resources Corporation and its subsidiaries, including DRP. He also served as the President of DRP from approximately September 2003 to March 2006 and as the General Manager of DRP from approximately September 2003 to January 2006. Defendant Neil also served as President of Defendant DR Acquisition, Defendant Cayman Holdings, and DR Cayman. Defendant Neil also was granted Power of Attorney to act in Peru with regard to the La Oroya Complex and DRP. Defendant Neil had actual knowledge of the tortious and wrongful conduct of these Defendants and their subsidiaries and participated in it, including in the acts and omissions of Defendants described herein, and is thus personally liable in his individual capacity.  This liability is in addition to and independent of any liability based on conspiracy.

126.     During times relevant herein, Defendant Zelms was President, Chief Executive Officer, and Vice Chairman of Doe Run Resources and its subsidiaries, including DRP. Defendant Zelms also was President of DR Cayman. Defendant Zelms also was granted Power of Attorney to act in Peru on behalf of DRM and DRP and with regard to the La Oroya Complex owned by these Defendants. Defendant Zelms had actual knowledge of the tortious and wrongful conduct of Doe Run Resources and its subsidiaries and participated in it, including in the acts and omissions of Defendants described herein, and is thus personally liable in his individual capacity. This liability is in addition to and independent of any liability based on conspiracy.

127.     During times relevant herein, Defendant Fox was Chief Financial Officer and Vice President of Finance of Doe Run Resources, DR Acquisition, and their subsidiaries,

Electronically Filed - City of St. Louis - February 16, 2018 - 05:09 PM

including DRP. Defendant Fox also was Vice President of Finance and Treasurer of Defendant Cayman Holdings and Vice President of DR Cayman.  Defendant Fox had actual knowledge of the tortious and wrongful conduct of DRRC, and DR Acquisition, and their subsidiaries and participated in it, including the acts and omissions of Defendants described herein; as such, Defendant Fox is personally liable in his individual capacity. This liability is in addition to and independent of any liability based on conspiracy.

128.     During times relevant herein, Defendant Fay was Vice President, Treasurer, and Chief Financial Officer of Renco and its subsidiaries, including DRP. Defendant Fay also served as Vice President of Doe Run Resources, DR Acquisition, Cayman Holdings, and DR Cayman, and Vice President and Chief Financial Officer of DRM. Defendant Fay also was granted Power of Attorney to act in Peru with regard to DRM and DRP and the La Oroya Complex. Defendant Fay had actual knowledge of the tortious and wrongful conduct of Renco, Doe Run Resources, and their subsidiaries and participated in it, including in the acts and omissions of Defendants described herein, and is thus personally liable in his individual capacity. This liability is in addition to and independent of any liability based on conspiracy.

129.     During times relevant herein, Marvin Koenig was Executive Vice President of Renco and its subsidiaries, including DRP. Marvin Koenig also was Vice President of Doe Run Resources. Defendant Koenig is liable to Plaintiffs because Marvin Koenig  had actual knowledge of the tortious and wrongful conduct of Renco, Doe Run Resources, and their subsidiaries and participated in it, including in the acts and omissions of Defendants described herein, and is thus liable in his individual capacity. This liability is in addition to and independent of any liability based on conspiracy.

130.     During times relevant herein, Defendant Siegel was Vice President of Renco and

Electronically Filed - City of St. Louis - February 16, 2018 - 05:09 PM

its subsidiaries, including DRP. Defendant Siegel also was Vice President of DR Acquisition, Doe Run Resources, Doe Run Cayman Holdings, and Doe Run Cayman Ltd.  Defendant Siegel is liable to Plaintiffs because he had actual knowledge of the tortious and wrongful conduct of Renco, Doe Run, and their subsidiaries and participated in it, including in the acts and omissions of Defendants described herein, and is thus liable in his individual capacity. This liability is in addition to and independent of any liability based on conspiracy.

131.    During times relevant herein, Defendant Sadlowski was Vice President and Secretary of Renco and its subsidiaries, including DRP. Defendant Sadlowski also served as Secretary of DR Acquisition, and DR Cayman, and Vice President and Secretary of DR Cayman. Defendant Sadlowski is liable to Plaintiffs because he had actual knowledge of the tortious and wrongful conduct of Renco, DR Acquisition, and their subsidiaries and participated in it, including in the acts and omissions of Defendants described herein, and is thus liable in his individual capacity. This liability is in addition to and independent of any liability based on conspiracy.

132.    During times relevant herein, Defendant Binko was Vice President of Renco and its subsidiaries, including DRP. Defendant Binko also served as Vice President of DR Acquisition, Cayman Holdings, and DR Cayman. As an officer, Defendant Binko is liable to Plaintiffs because he had actual knowledge of the tortious and wrongful conduct of Renco, DR Acquisition, and their subsidiaries and participated in it, including in the acts and omissions of Defendants described herein, and is thus liable in his individual capacity. This liability is in addition to and independent of any liability based on conspiracy.

133.    During times relevant herein, Defendant Ryan was Assistant Secretary, Vice Chairman, and General Counsel of Renco and its subsidiaries, including DRP.  Defendant Ryan

Electronically Filed - City of St. Louis - February 16, 2018 - 05:09 PM

also served as Assistant Secretary of DR Acquisition, Cayman Holdings, and DR Cayman. As an officer, Defendant Ryan is liable to Plaintiffs because he had actual knowledge of the tortious and wrongful conduct of Renco, DR Acquisition, and their subsidiaries and participated in it, including in the acts and omissions of Defendants described herein, and is thus liable in his individual capacity. This liability is in addition to and independent of any liability based on conspiracy.

134.     As officers of Defendants Renco and Doe Run Resources Corporation, Defendants Kaiser, Neil, Zelms, Fox, Fay, Koenig, Siegel, Sadlowski, Binko, Ryan, and Rennert are liable to Plaintiffs because they had actual knowledge of Renco's and Doe Run Resources' tortious and wrongful conduct and participated in it, including in the acts and omissions of Defendants described herein, and they are thus liable in their individual capacity. This liability is in addition to and independent of any liability based on conspiracy.

135.     In particular, at all relevant times hereto, Defendants Kaiser, Neil, Zelms, Fox, Fay, , Siegel, Sadlowski, Binko, Ryan, and Rennert and Marvin Koenig:

a.  Were responsible for and took actions and omitted to act with regard to  approval of expenditures for pollution control measures and expenditures for the remediation of properties;

b.  Were involved in the budgeting process of Doe Run Resources and Renco, including setting environmental goals and the pollution control budget for the La Oroya Complex and related operations and facilities;

c.  Had knowledge of technologies owned by Doe Run Resources and Renco that were available to remediate contaminated soil but which were not used;

d.  Had knowledge of the release of emissions from the La Oroya Complex and

Electronically Filed - City of St. Louis - February 16, 2018 - 05:09 PM

related operations and facilities onto and into the surrounding communities, including the properties on which Plaintiffs have resided and/or continue to reside, use, and visit, and they failed to inform these communities or take any action to eliminate or reduce the release of metals and other toxic substances;

e.  Participated in the approval of and/or approved budgets which delayed implementation of proper pollution control measures and the remediation of properties contaminated by the releases from the Complex and related operations and facilities; and

f.  Purposefully withheld information and/or deliberately deceived the Plaintiffs with regard to the dangers of the toxic substances released from Defendants' metallurgical complex and related operations and facilities.

136.    As a direct and proximate result of the releases of toxic materials from the Defendants' properties, operations, and facilities, Plaintiffs have suffered, currently suffer, and will continue to suffer injuries, damages, and losses which include but are not limited to: physical and psychological injuries, learning and other permanent disabilities, pain, mental anguish, emotional distress, the loss of household services, the cost of medical, educational and rehabilitation expenses and other expenses of training and assistance, and loss of earnings, income, and earning capacity. Such injuries, damages, and losses are reasonably likely to continue to occur in the future.

137.    The actions of Defendants Kaiser, Neil, Zelms, Fox, Fay, , Siegel, Sadlowski, Binko, Ryan, and Rennert and Marvin Koenig were outrageous due to their evil motive or reckless indifference to the rights of Plaintiffs, entitling Plaintiffs to an award of punitive damages.

Electronically Filed - City of St. Louis - February 16, 2018 - 05:09 PM

WHEREFORE, Plaintiffs respectfully request judgment to be entered in their favor against the Defendants jointly and severally for:

    (a)  an amount of damages in such sum as is fair and reasonable to compensate the Plaintiffs in an amount in excess of TWENTY FIVE THOUSAND DOLLARS ($25,000);

    (b)  punitive damages in an amount sufficient to punish and deter the Defendants from further such conduct;

    (c)  their costs and expenses;

    (d)  pre- and post-judgment interest as allowed by statute and law; and

    (e)  such further relief as the Court deems appropriate.

<u>COUNT III – CIVIL CONSPIRACY</u>
**As to Defendants Renco, Doe Run Resources,
DR Acquisition, Cayman Holdings, the Trusts, Rennert,
Fay, Koenig, Siegel, Sadlowski, Binko, and Ryan**

138.    Plaintiffs repeat the allegations contained in Paragraphs 1 through 97 inclusive, and incorporate them by reference herein.

139.    Defendants Doe Run Resources, DR Acquisition Corp., Renco, and Cayman Holdings, themselves and through their agents, servants and employees, have acted jointly and in conspiracy with the individual Defendants to commit the torts alleged in this Petition, and are jointly and severally liable for the activities and toxic environmental releases from the operations of Defendants' La Oroya complex.

140.    Defendants agreed to a scheme by which, from the States of Missouri and/or New York, they exerted complete control, not merely stock control, but complete domination of the finances, policies, and business practices of DRP; and this control is and has been so complete that the subsidiary has never had a separate mind, will, or existence of its own. From the States

of Missouri and/or New York, Defendants have controlled environmental expenditures, production practices, use of technology, policies including public relations and decision-making policies, and the deliberate withholding of information regarding the dangers of the toxic substances released by Defendants. Such control is used by Defendants to make substantial profit while causing injuries to the Plaintiffs, constituting fraud and injustice that violates the Plaintiffs' legal rights. This unjust use of control proximately caused the Plaintiffs' injuries.

141.    One of the purposes of the conspiracy agreed upon between Defendants Doe Run Resources, DR Acquisition, Renco, Cayman Holdings, and the other Defendants includes avoiding the cost of instituting procedures at and purchasing equipment for Defendants' La Oroya complex and related operations and facilities that would protect public health and the health of the Plaintiffs, in order to increase the profits of Doe Run Resources, to increase the value of Defendants DR Acquisition Corp. and Defendant Renco, to increase the incomes of the Defendants, and to avoid reduction of profits, bonuses, and the value of wages, stock, and/or stock options of the Defendants, all of which has allowed toxic substances to be released from their properties in La Oroya and related operations and facilities, resulting in damage to Plaintiffs.

142.    Defendants Doe Run Resources, DR Acquisition, Renco, and Cayman Holdings, together with the other Defendants, did in fact allow toxic substances to be released from their properties in La Oroya and related operations and facilities in order to avoid the cost of instituting procedures and purchasing equipment at Defendants' metallurgical complex and related operations and facilities.

143.    As a direct and proximate result of the toxic releases from the Defendants' properties, operations, and facilities by Defendant Doe Run Resources, together with the other

Electronically Filed - City of St. Louis - February 16, 2018 - 05:09 PM

Defendants and their agents, Plaintiffs have suffered, currently suffer, and will continue to suffer injuries, damages, and losses which include but are not limited to:  physical and psychological injuries, learning and other permanent disabilities, pain, mental anguish, emotional distress, the loss of household services, the cost of medical, educational and rehabilitation expenses and other expenses of training and assistance, and loss of earnings, income, and earning capacity. Such injuries, damages and losses are reasonably likely to continue to occur in the future.

144.     The actions and omissions of Defendants Doe Run Resources, DR Acquisition, Renco, and Cayman Holdings, in the form of decisions made from the States of Missouri and/or New York, were outrageous due to Defendants' evil motive or reckless indifference to the rights of Plaintiffs, entitling Plaintiffs to an award of punitive damages.

145.     Defendant Renco's corporate status was dissolved from December 31, 2003 to August 10, 2004.  The shareholders, officers, and directors of Defendant Renco are personally liable for the tortious acts committed by, and harms caused by, the Renco Group during such time.

WHEREFORE, Plaintiffs respectfully request judgment to be entered in their favor against the Defendants jointly and severally for:

(a) an amount of damages in such sum as is fair and reasonable to compensate the Plaintiffs in an amount in excess of TWENTY FIVE THOUSAND DOLLARS ($25,000);

(b) punitive damages in an amount sufficient to punish and deter the Defendants from further such conduct;

(c) their costs and expenses;

(d) pre- and post-judgment interest as allowed by statute and law; and

Electronically Filed - City of St. Louis - February 16, 2018 - 05:09 PM

(e)  such further relief as the Court deems appropriate.

## COUNT IV – CIVIL CONSPIRACY
### As to Defendants Rennert, Kaiser, Neil, Zelms, Fox, Fay, Koenig, Siegel, Sadlowski, Binko, and Ryan

146.    Plaintiffs repeat the allegations contained in Paragraphs 1 through 107 inclusive, and incorporate them by reference herein.

147.    At all relevant times, Defendants Kaiser, Neil, Zelms, Fox, Fay, , Siegel, Sadlowski, Binko, Ryan, and Rennert and Marvin Koenig were acting jointly and in conspiracy with each other and with the corporate Defendants. Defendants agreed to a scheme by which they exert complete control, not merely stock control, but complete domination of the finances, policies, and business practices of DRP, such control being so complete that the subsidiary has never had a separate mind, will, or existence of its own.

148.    Defendants' control of environmental expenditures, production practices, use of technology, policies including public relations and decision-making policies, and Defendants' deliberate withholding of information regarding the dangers of the toxic substances released by Defendants, is used and has been used by Defendants to make substantial profit while causing injuries to the Plaintiffs, constituting fraud and injustice that violates the Plaintiffs' legal rights. This unjust use of control proximately caused the Plaintiffs' injuries.

149.    Defendants Kaiser, Neil, Zelms, Fox, Fay, Siegel, Sadlowski, Binko, Ryan, and Rennert and Marvin Koenig, had and have an economic motive in these actions and omissions, and these Defendants have personally benefited from the conspiracy. The objectives of the conspiracy include: failing to adequately control the toxic environmental releases from the La Oroya Complex and related operations and facilities that Defendants knew were being released from or transported onto properties on which the Plaintiffs have in the past and/or continue to

Electronically Filed - City of St. Louis - February 16, 2018 - 05:09 PM

reside, visit or use; and failing to implement adequate pollution controls at Defendants' La Oroya

Complex because of the cost and associated reduction of profits, value, bonuses and the value of

wages, stock and/or stock options of Doe Run Resources, Renco, as well as other Defendants.

150.    One of the purposes of the conspiracy agreed upon between Defendants Kaiser,

Neil, Zelms, Fox, Fay, , Siegel, Sadlowski, Binko, Ryan, and Rennert and Marvin Koenig and

the corporate Defendants included allowing toxic substances to be released from their properties

in La Oroya and related operations and facilities, resulting in damage to Plaintiffs, in order to

avoid the cost of instituting procedures and purchasing equipment at Defendants' La Oroya

Complex and related operations and facilities that would protect public health and the health of

the Plaintiffs, all of which was done in order to increase the profits of Doe Run Resources, to

increase the value of Defendants DR Acquisition and Renco, and to increase the incomes of the

Defendants by avoiding any reduction of profits, bonuses, wages, stock, and/or stock value of the

Defendants.

151.    Defendants Kaiser, Neil, Zelms, Fox, Fay, , Siegel, Sadlowski, Binko, Ryan, and

Rennert, and Marvin Koenig together with the corporate Defendants, did in fact allow toxic

substances to be released from their properties in La Oroya and related operations and facilities

in order to avoid the cost of instituting procedures and purchasing equipment at Defendants' La

Oroya Complex and related operations and facilities.

152.    As a direct and proximate result of the toxic releases from the Defendants'

properties, operations, and facilities caused by the acts and omissions of Defendants Kaiser, Neil,

Zelms, Fox, Fay, , Siegel, Sadlowski, Binko, Ryan, and Rennert and Marvin Koenig, together

with the corporate Defendants, Plaintiffs have suffered, currently suffer, and will continue to

suffer injuries, damages, and losses which include but are not limited to:  physical and

Electronically Filed - City of St. Louis - February 16, 2018 - 05:09 PM

psychological injuries, learning and other permanent disabilities, pain, mental anguish, emotional distress, the loss of household services, the cost of medical, educational and rehabilitation expenses and other expenses of training and assistance, and loss of earnings, income, and earning capacity. Such injuries, damages and losses are reasonably likely to continue to occur in the future.

153.    The actions of Defendants Kaiser, Neil, Zelms, Fox, Fay, , Siegel, Sadlowski, Binko, Ryan, and Rennert and Marvin Koenig were outrageous due to Defendant's evil motive or reckless indifference to the rights of Plaintiffs, entitling Plaintiffs to an award of punitive damages.

WHEREFORE, Plaintiffs respectfully request judgment to be entered in their favor against the Defendants jointly and severally for:

(a) an amount of damages in such sum as is fair and reasonable to compensate the Plaintiffs in an amount in excess of TWENTY FIVE THOUSAND DOLLARS ($25,000);

(b) punitive damages in an amount sufficient to punish and deter the Defendants from further such conduct;

(c) their costs and expenses;

(d) pre- and post-judgment interest as allowed by statute and law; and

(e) such further relief as the Court deems appropriate.

Electronically Filed - City of St. Louis - February 16, 2018 - 05:09 PM

**COUNT V – ABSOLUTE or STRICT LIABILITY**
**As to Defendants Renco, Doe Run Resources Corporation,**
**DR Acquisition, Doe Run Cayman Holdings, the Trusts, Rennert,**
**Fay, Koenig, Siegel, Sadlowski, Binko, and Ryan**

154.    Plaintiffs repeat the allegations contained in Paragraphs 1 through 107 and incorporate them by reference herein.

155.    The ownership, operation, maintenance, management, handling, processing and use of metals and gases and other toxic substances at Defendants' metallurgical complex and related operations and facilities for which Defendants Doe Run Resources, DR Acquisition, Renco, and Cayman Holdings are jointly and severally liable, constituted and continue to constitute an abnormally dangerous activity or ultra-hazardous activity, because such activities create a high risk of significant harm.

156.    Defendants Doe Run Resources, DR Acquisition Corp., Renco, and Cayman Holdings are thus strictly liable to Plaintiffs for all damages which have resulted or will result from the release of the metals and other toxic substances as a result of the handling, storage, and disposal of such substances at Defendants' metallurgical complex and related facilities and operations.

157.    The collection, handling, storage, and disposal of metals and other toxic substances by Defendants Doe Run Resources, DR Acquisition, Renco, and Cayman Holdings, themselves and/or through their agents, servants and employees at Defendants' properties, have directly and proximately caused release of such substances into the environment and the community surrounding these properties, including onto properties where Plaintiffs have in the past and/or continue to reside, use, visit, and/or were exposed, resulting in toxic exposure to Plaintiffs.

158.    As a direct and proximate result of the releases from Defendants' properties,

49

Electronically Filed - City of St. Louis - February 16, 2018 - 05:09 PM

operations, and facilities, Plaintiffs have suffered, currently suffer, and will continue to suffer injuries, damages and losses which include but are not limited to:  physical and psychological injuries, learning and other permanent disabilities, pain, mental anguish, emotional distress, the loss of household services, the cost of medical, educational, and rehabilitation expenses and other expenses of training and assistance, and loss of earnings, income, and earning capacity. Such injuries, damages and losses are reasonably likely to continue to occur in the future.

159. The actions and omissions in the form of decisions made from the States of Missouri and/or New York of Defendants Doe Run Resources, DR Acquisition, Renco, and Cayman Holdings were outrageous due to Defendants' evil motive or reckless indifference to the rights of Plaintiffs, entitling Plaintiffs to an award of punitive damages.

160. Because Defendant Renco's corporate status was dissolved from December 31, 2003 to August 10, 2004, its shareholders, officers, and directors are personally liable for the tortious acts committed by, and harms caused by, Renco during such time.

WHEREFORE Plaintiffs respectfully request judgment to be entered in their favor against Defendants jointly and severally for:

(a) an amount of damages in such sum as is fair and reasonable to compensate the Plaintiffs in an amount in excess of TWENTY FIVE THOUSAND DOLLARS ($25,000);

(b) punitive damages in an amount sufficient to punish and deter the Defendants from further such conduct;

(c) their costs and expenses;

(d) pre- and post-judgment interest as allowed by statute and law; and

(e) such further relief as the Court deems appropriate.

Electronically Filed - City of St. Louis - February 16, 2018 - 05:09 PM

### COUNT VI – ABSOLUTE or STRICT LIABILITY
**As to Defendants Rennert, Kaiser, Neil, Zelms, Fox, Fay,
Koenig, Siegel, Sadlowski, Binko, and Ryan**

161.    Plaintiffs repeat the allegations contained in Paragraphs 1 through 107, and

incorporate them by reference herein.

162.    Defendants Kaiser, Neil, Zelms, Fox, Fay, , Siegel, Sadlowski, Binko, Ryan, and

Rennert and Marvin Koenig had actual knowledge of the corporate Defendants' tortious conduct

and participated in it, including in the acts and omissions of Defendants described herein,

involving the ownership, operation, maintenance, management, handling, processing and use of

metals and gases and other toxic substances at Defendants' metallurgical complex and related

operations and facilities, which constituted and continues to constitute an abnormally dangerous

activity or ultra-hazardous activity, because such activities create a high risk of significant harm,

and is thus each is jointly and severally liable in his individual capacity.

163.    Defendants Kaiser, Neil, Zelms, Fox, Fay, Koenig, Siegel, Sadlowski, Binko,

Ryan, and Rennert are strictly liable to Plaintiffs for all damages which have resulted or will

result from the release of the metals and other toxic substances as a result of the handling,

storage, and disposal of such substances at Defendants' La Oroya Complex and related facilities

and operations.

164.    The collection, handling, storage, and disposal of metals and other toxic

substances at Defendants' properties has directly and proximately caused release of such

substances into the environment and the community surrounding these properties including to

properties where Plaintiffs have in the past and/or continue to reside, use, visit, and/or were

exposed, resulting in toxic exposure to Plaintiffs.

165.    As a direct and proximate result of the releases of toxic and harmful substances

Electronically Filed - City of St. Louis - February 16, 2018 - 05:09 PM

from the Defendants' properties, operations and facilities, Plaintiffs have suffered, currently suffer, and will continue to suffer injuries, damages and losses which include but are not limited to:  physical and psychological injuries, learning and other permanent disabilities, pain, mental anguish, emotional distress, the loss of household services, the cost of medical, educational, and rehabilitation expenses and other expenses of training and assistance, and loss of earnings, income, and earning capacity. Such injuries, damages and losses are reasonably likely to continue to occur in the future.

166.    The actions of Defendants Kaiser, Neil, Zelms, Fox, Fay, , Siegel, Sadlowski, Binko, Ryan, and Rennert and Marvin Koenig were outrageous due to Defendants' evil motive or reckless indifference to the rights of Plaintiffs, entitling Plaintiffs to an award of punitive damages.

WHEREFORE Plaintiffs respectfully request judgment to be entered in their favor against Defendants jointly and severally for:

(a)  an amount of damages in such sum as is fair and reasonable to compensate the Plaintiffs in an amount in excess of TWENTY FIVE THOUSAND DOLLARS ($25,000);

(b)  punitive damages in an amount sufficient to punish and deter the Defendants from further such conduct;

(c)  their costs and expenses;

(d)  pre- and post-judgment interest as allowed by statute and law; and

(e)  such further relief as the Court deems appropriate.

**COUNT VII – DIRECT LIABILITY FOR BREACH OF ASSUMED DUTIES PERTAINING TO FORESEEABLE HARMS**
**As to Defendants Doe Run Resources, Cayman Holdings, Kaiser, Neil, Zelms, and Fox**

Electronically Filed - City of St. Louis - February 16, 2018 - 05:09 PM

156.    Plaintiffs repeat the allegations contained in Paragraphs 1 through 107 and incorporate them by reference herein.

157.    Defendant Doe Run Resources, by and through its agents and representatives, entered into valid and binding contractual agreements with its subsidiaries to manage and operate the La Oroya Complex.  In so doing, Defendant Roe Run Resources obliged itself and its agents to perform services related to the management and operation of the La Oroya Complex, and assumed responsibility for the management and operations of the Complex.

158.    Defendant Doe Run Resources and its agents also assumed control of and participated in the operation and management of the La Oroya Complex pursuant to but also before, during, after, beyond, and/or in spite of the contractual agreements between Defendant Doe Run Resources and its subsidiaries.

159.    Defendant Doe Run Resources and its agents knew or should have known that the operation and management of the La Oroya Complex implicated and involved the risk of the safety of others – including that of the Plaintiffs. More specifically, Defendant Doe Run Resources had actual knowledge that the operation of a metallurgical complex like the La Oroya Complex involves the emission of toxic and hazardous substances referenced and described herein, as well as the contamination of the nearby environment, including the air and drinking water, all of which pose serious health risks to persons exposed, including these Plaintiffs.

160.    In assuming responsibility for performing services related to the operation and management of the La Oroya Complex, Defendant Doe Run Resources and its agents placed themselves in such a relation with the Plaintiffs that imposed on Defendants a duty to perform these services and assumed obligations of due care. More specifically, Defendant Doe Run Resources and its agents had a duty to act in such a way that would ensure that the Plaintiffs

Electronically Filed - City of St. Louis - February 16, 2018 - 05:09 PM

would not be harmed. Defendants' duties included ensuring Defendants did not cause a risk of harm to Plaintiffs, did not increase any risk of harm to Plaintiffs, and did not to allow any existing risk of harm to continue.

161.    In continuing to control, participate in, oversee, manage, and perform services on behalf of the La Oroya Complex- beyond and after and notwithstanding the existence or nonexistence of any contract- Defendant Doe Run Resources and its agents continued to assume responsibility for the management and operations of the La Oroya Complex, and thereby placed itself in such a relation with the Plaintiffs so as to owe them a duty of care to prevent and/or discontinue any harms to the Plaintiffs.

162.    Defendant Doe Run Resources by and through its agents allowed the Plaintiffs to be exposed to toxic substances, failed to discontinue any such exposure, and caused Plaintiffs' exposure by negligently performing its duties in the operation and management of the La Oroya Complex. As such, Defendant Doe Run Resources by and through and its agents failed to prevent harms, caused harms, and allowed harms to be inflicted on Plaintiffs in its management and operations of the La Oroya Complex.

163.    In knowingly participating in, causing, controlling, overseeing, managing, and allowing to continue the environmental contamination and emission of toxic and hazardous substances which pose serious risks of harm to those exposed, Defendant Doe Run Resources and its agents negligently performed their assumed responsibilities and contractual obligations owed to persons who could be and were harmed, including the Plaintiffs, and thereby breached thereby duty of care.

164.    In failing to prevent, allowing to continue, and causing Plaintiffs' exposure to toxic substances and environmental contaminants, Defendants directly and proximately caused

Electronically Filed - City of St. Louis - February 16, 2018 - 05:09 PM

the release of toxic substances into the environment and the community surrounding the La

Oroya Complex, including to properties where Plaintiffs have in the past and/or continue to

reside, use, visit, and/or were exposed, resulting in toxic exposure to Plaintiffs, thereby causing

the harms and injuries to the Plaintiffs, as herein described.

165.    As a direct and proximate result of Defendants' acts and omissions and breaches

of their duty of care, Plaintiffs have suffered, currently suffer, and will continue to suffer

injuries, damages, and losses which include but are not limited to physical and psychological

injuries, learning and other permanent disabilities, pain, mental anguish, emotional distress, the

loss of household services, the cost of medical, educational, and rehabilitation expenses and

other expenses of training and assistance, and loss of earnings, income, and earning capacity.

Such injuries, damages and losses are reasonably likely to continue to occur in the future, and

Defendants and their agents are thereby directly liable.

166.    Defendant Doe Run Resources and its agents are directly liable for their breach of

duties imposed on them by their assumption of control of and responsibility for operations that

foreseeably would and did cause harm to the Plaintiffs, notwithstanding Defendant Doe Run

Resources' proclaimed status as "independent contractor" in the various service agreements

between Doe Run Resources and its subsidiaries.

167.    Defendants breached their duties to manage and operate the La Oroya Complex

with evil motive and/or reckless indifference to the safety of the Plaintiffs by reducing personnel

and cutting funds to lower expenses, underfunding and undercapitalizing the subsidiaries, and

making decisions to delay or avoid necessary updates, repairs, and improvements of the

Complex, and/or in allowing such decisions to be made, in order to increase profits, derive

higher pay through bonuses, increase the value of any stocks and shares of the company.

Electronically Filed - City of St. Louis - February 16, 2018 - 05:09 PM

WHEREFORE Plaintiffs respectfully request judgment to be entered in their favor against Defendants jointly and severally for:

(a) an amount of damages in such sum as is fair and reasonable to compensate the Plaintiffs in an amount in excess of TWENTY FIVE THOUSAND DOLLARS ($25,000);

(b) punitive damages in an amount sufficient to punish and deter the Defendants from further such conduct;

(c) their costs and expenses;

(d) pre- and post-judgment interest as allowed by statute and law; and for such further relief as the Court deems appropriate.

### COUNT VIII – DIRECT LIABILITY FOR BREACH OF ASSUMED DUTIES PERTAINING TO FORESEEABLE HARMS
**As to Defendants Renco, DR Acquisition, Rennert, Fay, Koenig, Siegel, Sadlowski, Binko, and Ryan**

168. Plaintiffs repeat the allegations contained in Paragraphs 1 through 107 and incorporate them by reference herein.

169. Defendant Renco, by and through its agents and representatives, including but not limited to Defendant Rennert, entered into valid and binding contractual agreements with Doe Run Resources to perform services on behalf of Doe Run Resources and its subsidiaries, in particular, as related to the management and operation of the La Oroya Complex; Defendant Renco, by and through its agents and representatives, simultaneously assumed control of the operations of Doe Run Resources and its subsidiaries not only through these "Management" and service agreements, but also through its control of Doe Run Resources and its subsidiaries through various "Tax Sharing" and insurance procurement agreements and policies.

Electronically Filed - City of St. Louis - February 16, 2018 - 05:09 PM

170.    Defendant Renco, by and through its agents and representatives, including but not limited to Defendant Rennert, entered into a valid and binding contractual agreement with Cayman Holdings to perform services on behalf of Cayman Holdings and its subsidiaries.  As Cayman Holdings' sole business purpose is the ownership and control of DRP, this contract's sole purpose was related to the management and operation of the La Oroya Complex. Defendant Renco, by and through its agents and representatives, simultaneously assumed control of the operations of Cayman Holdings and its subsidiaries not only through this service agreement, but also through its control of Cayman Holdings and its subsidiaries through various "Tax Sharing" and insurance procurement agreements and policies.

171.    Defendants Renco, Rennert, and their agents also assumed responsibility for and took total control of the operations of Doe Run Resources, Cayman Holdings, and their subsidiaries by overseeing all financial decisions – in particular the approvals for expenditures, including but not limited to those pertaining to the modernization and improvement efforts in the La Oroya Complex.

172.    In so doing, Defendant Renco assumed responsibility for the management and operations of the La Oroya Complex through its control of and contractual agreements with Doe Run Resources, Cayman Holdings, and their subsidiaries.

173.    Defendants Renco, Rennert, and their agents knew or should have known that the operation and management of the La Oroya Complex involved the safety of others – including that of the Plaintiffs. More specifically, Defendants Renco, Rennert, and their agents had actual knowledge that the operation of a metallurgical complex such as the La Oroya Complex involves the emission of toxic and hazardous substances referenced and described herein, as well as contamination of the nearby environment, including the air and drinking water, all of which

Electronically Filed - City of St. Louis - February 16, 2018 - 05:09 PM

pose serious health risks to persons exposed, including these Plaintiffs; and these Defendants had actual knowledge that the expenditures related to improvements and modernization efforts were directly related to the metallurgical complex's toxic emissions and environmental contamination.

174.    In assuming responsibility for and taking total control of the management of the La Oroya Complex, whether through contractual agreements, company policies, or the acts of Renco officers and directors regarding the operation and management of the La Oroya Complex, Defendants Renco, Rennert, and their agents placed themselves in a relation with Plaintiffs that imposed on Defendants a duty to perform acts directly or indirectly related to the operation and management of the Complex with due care. More specifically, Defendants Renco, Rennert, and their agents had a duty to act in such a way that would ensure that the Plaintiffs would not be harmed. Defendants' duties included ensuring Defendants did not cause harm to Plaintiffs, did not increase the risk of harm to Plaintiffs, and did not allow any existing harms to continue.

175.    In continuing to control, participate in, oversee, manage, and perform services that affected the operation of, that financed or funded, that pertained to, or on behalf of the La Oroya Complex, whether pursuant to or notwithstanding any contractual agreement, Defendants Renco, Rennert, and their agents assumed responsibility for the management and operations of the La Oroya Complex, and thereby placed themselves in such a relation with the Plaintiffs so as to owe them a duty of care to prevent and/or discontinue any harms to the Plaintiffs.

176.    Defendants Renco, Rennert, and their agents allowed the Plaintiffs to be exposed to toxic substances, failed to discontinue any such exposure, and caused their exposure by negligently performing their duties in or related to—or that affected or impacted the operation and management— the La Oroya Complex.  As such, Defendants Renco, Rennert, and their agents failed to prevent harms, caused harms, and allowed harms to be inflicted on Plaintiffs in

Electronically Filed - City of St. Louis - February 16, 2018 - 05:09 PM

their management and operations of the La Oroya Complex.

177.     In knowingly participating in, causing, controlling, overseeing, managing, directing, and/or allowing to continue the environmental contamination and emission of toxic and hazardous substances which posed and continue to pose serious risks of harm to those exposed, Defendants Renco, Rennert, and their agents negligently performed their assumed responsibilities and contractual obligations owed to persons who could be and were harmed, including the Plaintiffs, and thereby breached their duty of care.

178.     In so doing, Defendants directly and proximately caused the release of toxic substances into the environment and the community surrounding the La Oroya Complex, including to properties where Plaintiffs have in the past and/or continue to reside, use, visit, and/or were exposed, resulting in toxic exposure to Plaintiffs, thereby causing the harms and injuries to the Plaintiffs, as herein described.

179.     As a direct and proximate result of Defendants' acts and omissions and breaches of their duty of care, Plaintiffs have suffered, currently suffer, and will continue to suffer injuries, damages and losses which include but are not limited to physical and psychological injuries, learning and other permanent disabilities, pain, mental anguish, emotional distress, the loss of household services, the cost of medical, educational, and rehabilitation expenses and other expenses of training and assistance, and loss of earnings, income, and earning capacity. Such injuries, damages and losses are reasonably likely to continue to occur in the future, and Defendants and their agents are thereby directly liable.

180.     Defendants breached their duties to manage and operate the La Oroya Complex with evil motive and/or reckless indifference to the safety of the Plaintiffs by reducing personnel and cutting funds to lower expenses, underfunding and undercapitalizing the subsidiaries, and

Electronically Filed - City of St. Louis - February 16, 2018 - 05:09 PM

making decisions to delay or avoid necessary updates, repairs, and improvements of the Complex that affected or impacted necessary improvements and repairs in order to increase profits, derive higher pay through bonuses, increase the value of any stocks and shares of the company for Defendants, and to funnel money to themselves.

181.    Notwithstanding any disclaimed liability, proclaimed status as "consultant" or "independent contractor," or purported limitation of liability as expressed in any intercompany agreements, still, Defendants Renco, Rennert, and their agents are directly liable for their breach of duties imposed on them by their assumption of control of and responsibility for operations that foreseeably would and did cause harm to the Plaintiffs.

WHEREFORE Plaintiffs respectfully request judgment to be entered in their favor against Defendants jointly and severally for:

(a) an amount of damages in such sum as is fair and reasonable to compensate the Plaintiffs in an amount in excess of TWENTY FIVE THOUSAND DOLLARS ($25,000);

(b) punitive damages in an amount sufficient to punish and deter the Defendants from further such conduct;

(c) their costs and expenses;

(d) pre- and post-judgment interest as allowed by statute and law; and

(e) such further relief as the Court deems appropriate.

## COUNT IX – NEGLIGENT PEROFRMANCE OF A CONTRACT OR UNDERTAKING
### As to Defendants Doe Run Resources, Cayman Holdings,
### Kaiser, Neil, Zelms, and Fox

182.    Plaintiffs repeat the allegations contained in Paragraphs 1 through 107 and incorporate them by reference herein.

Electronically Filed - City of St. Louis - February 16, 2018 - 05:09 PM

183.    Defendant Doe Run Resources and its agents and representatives entered into valid and binding service contracts with its direct and indirect subsidiaries DRM and DRP to perform services pertaining to the management and operation of the La Oroya Complex. More specifically, Defendant Doe Run Resources and its agents undertook to operate and manage the La Oroya Complex both directly through its intercompany agreements with DRP and on behalf of DRM through its intercompany agreements with DRM pursuant to the "Peru Agreement."

184.    The purpose of these contractual agreements was for Doe Run Resources and its agents to operate and manage the La Oroya Complex.

185.    Defendant Doe Run Resources and its agents' undertakings involved assuming managerial oversight and control of DRP's and the La Oroya Complex's construction, management, financial and budgeting decisions, logistics, and strategic planning. More specifically, Doe Run Resources assumed responsibility not only for the provision of management and operations of the La Oroya Complex, but also for the training of the La Oroya Complex's personnel. The services pertained to day-to-day operations as well as business-wide transactions, financial management – explicitly including the spending for operations and improvement and pertaining to contamination, when it obliged itself to manage and take control of environmental remediation-coordination with the Peruvian government regarding modernization and improvement of the facilities, meeting all Peruvian legal regulations pertaining to environmental emissions, and improving the health and safety of the "general population in the operations area."

186.    Defendant Doe Run Resources and its agents' undertakings included the explicit and express contractual obligations to:

Electronically Filed - City of St. Louis - February 16, 2018 - 05:09 PM

   a.  Increase the health and safety of the general population in the operations area of the La Oroya Complex;

   b.  Assume control over all aspects of construction management at the La Oroya Complex;

   c.  Manage the safety and environmental programs, materials handling, finances, and public relations at La Oroya Complex;

   d.  Train personnel at the La Oroya Complex in a number of areas, including those related to critical environmental management, environmental cleanup, environmental remediation, and other health and safety issues to increase the health and safety of the general population in the operations area of the La Oroya Complex;

   e.  Ensure that projects met performance standards; and

   f.  Coordinate with the Peruvian government regarding environmental improvements.

187.    Through these contractual undertakings, Defendant Doe Run Resources and its agents assumed complete control over production levels, emissions, and environmental controls and practices at the La Oroya Complex; as such, Defendants had ultimate responsibility for the safety of operations, emissions, environmental practices and policies, and communications to the public for the La Oroya Complex.

188.    Defendant Doe Run Resources and its agents warranted that they had the experience and expertise needed to perform the contemplated services and agreed to perform those services in a professional and competent manner. The services Defendants' undertook were

Electronically Filed - City of St. Louis - February 16, 2018 - 05:09 PM

to be provided in substantial compliance with all applicable agreements, laws, rules, orders, and regulations of any applicable governmental or quasi-governmental agency.

189.    Defendant Doe Run Resources and its agents knew or should have known that the release of the described metals, gases and other toxic substances would proximately cause damage to individuals living and working in the area surrounding the La Oroya Complex, including Plaintiffs; and Defendants knew or should have known that the management of the metallurgical complex in Peru, the handling of the raw materials both mined and purchased for production, the finances related to the operations and production, and other duties Defendants contractually undertook and assumed necessarily involved the toxic emissions and environmental contamination herein described. Moreover, Defendants knew or should have known that the improvements and modernization efforts also necessarily impacted and pertained to the toxic emissions and environmental contamination herein described and that Defendants contractually assumed control of and undertook to manage and oversee.

190.    Defendants therefore knew or should have known that these mining, smelting, and refining operations involved an inherent risk of harm to the Plaintiffs, as the byproducts of such operations involve toxic emissions and environmental contamination.

191.    Defendants thereby had a duty to develop and implement safety and environmental programs, procedures, and measures at the La Oroya Complex and to properly train La Oroya Complex personnel so as to limit the release of toxic substances from the La Oroya Complex. Defendants also had a duty to warn individuals in the area surrounding the Complex about the release of the toxic metals and gases and other toxic substances into the environment and community surrounding the La Oroya Complex, and of the reasonably foreseeable effects of such releases, including the dangers of inhaling or ingesting these toxic

Electronically Filed - City of St. Louis - February 16, 2018 - 05:09 PM

metals, gases, metalloids, and other toxic substances. Defendants also owed a duty to Plaintiffs to control and contain the metals and other toxic substances generated, handled, stored, and disposed of at the La Oroya Complex, and to warn and continue to warn Plaintiffs of the release of these toxic and harmful substances. And Defendants had a duty to ensure the construction, productions, safety programs, environmental programs, and other operations of the Complex were adequately funded such that the metallurgical complex did not allow the release of toxic emissions and contamination of the surrounding environment, discontinued any existent release and contamination, and prevented future releases and contamination.

192.    Defendants further had a duty to ensure that the Plaintiffs were not harmed by existing conditions of the La Oroya Complex, to prevent any such future harms, and to discontinue any current risk of harm, including but not limited to ceasing toxic emissions and contamination, warning the Plaintiffs, moving the Plaintiffs' residences and/or ceasing or moving operations.

193.    Defendant Doe Run Resources and its agents also assumed responsibility for and undertook to perform these services when it participated in the purchase and acquisition of the La Oroya Complex; more specifically, Defendants assumed responsibility for and assumed the duties related to the management of the La Oroya Complex, its operations and productions, including any and all liabilities related to environmental contamination, toxic emissions, and other such matters.

194.    Defendant Doe Run Resources and its agents had these duties notwithstanding any disclaimers of liability, proclaimed status as "independent contractor," and/or other limitation on liability, as Defendants undertook to perform these services and assumed these responsibilities, and in so doing, had the duty to do so with due care.

Electronically Filed - City of St. Louis - February 16, 2018 - 05:09 PM

195.    Defendants negligently performed their obligations under the service agreements; more specifically, Defendants:

a.   negligently, carelessly, and recklessly implemented insufficient and faulty safety and environmental measures, policies, and procedures at the La Oroya Complex and its related operations and facilities;

b.   negligently, carelessly, and recklessly managed environmental cleanup and remediation;

c.   negligently, carelessly, and recklessly implemented inadequate safety programs;

d.   negligently, carelessly, and recklessly managed and/or trained personnel on environmental management, environmental cleanup, environmental remediation, and other health and safety issues;

e.   negligently, carelessly, and recklessly handled communications with the public and these Plaintiffs by failing to warn Plaintiffs of the release of the toxic metals and gases and other toxic substances into the environment and community surrounding Defendants' metallurgical complex and specifically onto and in and around the properties on which Plaintiffs have in the past and/or continue to reside, and of the reasonably foreseeable effects of such releases, including the dangers of inhaling or ingesting these toxic metals, gases, and other toxic substances; and/or

f.   negligently, carelessly, and recklessly allowed the release of toxic emissions from the La Oroya Complex and its related operations and facilities.

196.    Moreover, Defendants failed to exercise due care in complying with the terms of their service agreements and contracts by not performing services in a professional and

Electronically Filed - City of St. Louis - February 16, 2018 - 05:09 PM

competent manner, and/or in compliance with applicable agreements, laws, rules, orders, and regulations of the applicable governmental and quasi-governmental agencies.

197.    Defendants negligently allowed these things to occur while knowingly creating, failing to prevent, allowing to continue, and/or increasing the risks of harm to the Plaintiffs' health and safety, and in fact causing such harms to Plaintiffs' health and safety, as herein described.

198.    In this negligent performance of their assumed responsibilities and failure to exercise due care in their undertakings and contractual obligations, Defendants breached their duties owed.

199.    Defendants' breach of duties in their negligent, careless, and reckless performance of their obligations pursuant to the purchase and service agreements and other contracts directly and proximately caused the release of toxic substances into the environment and the community surrounding the La Oroya Complex, including onto the properties where Plaintiffs have in the past and/or continue to reside, use, visit, and/or were exposed, resulting in toxic exposure to Plaintiffs.

200.    Defendants' negligent performance and breach of duties herein described was for the purpose of  avoiding the costs of instituting procedures at and purchasing equipment for the Complex that would protect public health and the health of the Plaintiffs; this was to enable Defendants to increase profits, to increase the value of Defendants' stocks and/or stock options, to increase the incomes of the Defendants, and to avoid reduction of profits, bonuses, and the value of wages, stock, and/or stock options of the Defendants; as such, Defendants' negligent performance of contractual obligations and undertakings was with evil motive and reckless indifference to the health, safety, and well-being of Plaintiffs.

Electronically Filed - City of St. Louis - February 16, 2018 - 05:09 PM

201.    Moreover, Defendants purposefully withheld information and/or deliberately deceived the Plaintiffs with regard to the dangers of exposure to the toxic substances released into the environment by the La Oroya Complex and related operations and facilities in order to attempt to avoid negative press, manage public relations so as to protect the reputation of Defendants and their subsidiaries and parent companies, and attempt to avoid liability; as such, Defendants' acts and omissions herein described were done with evil motive and reckless indifference to the rights of Plaintiffs.

202.    As a direct and proximate result of the releases from Defendants' properties, operations and facilities, Plaintiffs have suffered, currently suffer, and will continue to suffer injuries, damages and losses which include but are not limited to: physical and psychological injuries, learning and other permanent disabilities, pain, mental anguish, emotional distress, the loss of household services, the cost of medical, educational, and rehabilitation expenses and other expenses of training and assistance, and loss of earnings, income, and earning capacity. Such injuries, damages and losses are reasonably likely to continue to occur in the future.

203.    The actions of Defendants Doe Run Resources and its agents were outrageous due to Defendants' reckless indifference to the health and safety of Plaintiffs, entitling Plaintiffs to an award of punitive damages.

WHEREFORE, Plaintiffs respectfully request judgment to be entered in their favor against the Defendants jointly and severally for:

(a) an amount of damages in such sum as is fair and reasonable to compensate the Plaintiffs in an amount in excess of TWENTY FIVE THOUSAND DOLLARS ($25,000);

(b) punitive damages in an amount sufficient to punish and deter the Defendants

Electronically Filed - City of St. Louis - February 16, 2018 - 05:09 PM

from further such conduct;

(c)  their costs and expenses;

(d)  pre- and post-judgment interest as allowed by statute and law; and

(e)  such further relief as the Court deems appropriate.

## COUNT X – NEGLIGENT PEROFRMANCE OF A CONTRACT OR UNDERTAKING
### As to Defendants Renco, DR Acquisition, Rennert,
### Fay, Koenig, Siegel, Sadlowski, Binko, and Ryan

204.    Plaintiffs repeat the allegations contained in Paragraphs 1 through 107 and incorporate them by reference herein.

205.    Defendant Renco, by and through its director and chairman Defendant Ira Rennert, and by and through its officers and agents, together and each of them, assumed managerial control and oversight of and complete control of the financing for the Doe Run operations, including the operations of the La Oroya Complex, as well as of the acts and omissions of Defendant Doe Run Resources and its agents in its operation and management of the La Oroya Complex, through various management agreements and tax-sharing and insurance procurement agreements between Defendant Renco and its agents and Defendants Doe Run Resources and Cayman Holdings on behalf of themselves and their agents and subsidiaries.

206.    Defendant Rennert, by and through his ownership, operation and management, and control of Defendant Renco, and in his capacities as sole director and board member for Doe Run Resources, and in his capacities as officer and chairman of Cayman Holdings, and together with Defendant Renco and its agents, assumed and exerted control over Defendants Doe Run Resources, DR Acquisition, Cayman Holdings, and their subsidiaries, and more specifically with regard to the management and operations of the La Oroya Complex.

Electronically Filed - City of St. Louis - February 16, 2018 - 05:09 PM

207.     Defendants Rennert and Renco and their agents assumed control over the operation of the La Oroya Complex through the management agreements and related management policies, which pertained to Defendants Renco's and Rennert's and their agents' control of the following for Doe Run Resources, Cayman Holdings and their subsidiaries: their financial and business operations, contractual relationships with external parties including financial institutions and partnering business entities, as well as the contractual relationships or intercompany arrangements between Doe Run Resources, Cayman Holdings and their subsidiaries.

208.     Defendants Rennert, Renco and their agents also explicitly assumed control over the finances and funding related to the operation of the La Oroya Complex when requiring Defendants Rennert and Renco and their agents' authorization for any expenditures related to improvements of operations pertaining to critical environmental issues pursuant to the management agreements; Rennert and Renco and their agents also assumed complete control over certain decisions pertaining to same when requiring pre-approval of any actions taken and authorization for any such expenditures.

209.     As such, Defendants Renco, Rennert, and their agents undertook to manage the operations of the metallurgical complex directly related to environmental contamination, remediation, and cleanup and the toxic emissions and air and water quality.

210.     Defendants Rennert, Renco and their agents knew or should have known that management and operations of the La Oroya Complex involved inherent risks to the health and safety of those nearby, including the Plaintiffs, and more specifically that the finances allotted for and the funding of modernization plans and other such improvements to the metallurgical complex necessarily impacted the toxic emissions and environmental contamination caused by

Electronically Filed - City of St. Louis - February 16, 2018 - 05:09 PM

the La Oroya Complex; and moreover that delays in such obligations, improvements, and modernizations would cause toxic substances to be emitted, continue the emissions of such toxic substances, and fail to improve or discontinue such previous contamination, each of which would pose extreme and serious health risks to the Plaintiffs.

211.    Defendants Rennert, Renco and their agents in fact had actual knowledge of the risks of such harms and injuries and that such actions would cause those harms and injuries, having not only contracted with the prior owner and government of Peru regarding such critical environmental issues upon purchasing the La Oroya Complex, but also having been engaged in similar litigation for injuries caused by such toxic emissions.

212.    In assuming the responsibility to manage and oversee the businesses and operations, in undertaking to manage and consult with Doe Run Resources, Cayman Holdings and their subsidiaries regarding the operations, and in assuming control of expenditures which explicitly related to the critical environmental issues herein described, Defendants Rennert, Renco, and their agents had a duty to exercise those undertakings with due care and ensure Plaintiffs were not thereby harmed.

213.    Defendants Rennert, Renco and their agents negligently, recklessly, carelessly, knowingly, and with reckless disregard for the safety of others, including the Plaintiffs, failed to take due care in preventing the harms to Plaintiffs by undercapitalizing and underfunding Doe Run Resources and its subsidiaries, and in particular DRP, and/or by refusing to authorize expenditures or delaying their authorization in order to funnel money to themselves.

214.    This negligent performance of duties directly and proximately caused the release of toxic substances into the environment and the community surrounding the La Oroya Complex,

Electronically Filed - City of St. Louis - February 16, 2018 - 05:09 PM

including to properties where Plaintiffs have in the past and/or continue to reside, use, visit, and/or were exposed, resulting in toxic exposure to Plaintiffs.

215.    As a direct and proximate result of the releases from Defendants' properties, operations and facilities, Plaintiffs have suffered, currently suffer, and will continue to suffer injuries, damages and losses which include but are not limited to physical and psychological injuries, learning and other permanent disabilities, pain, mental anguish, emotional distress, the loss of household services, the cost of medical, educational, and rehabilitation expenses and other expenses of training and assistance, and loss of earnings, income, and earning capacity. Such injuries, damages and losses are reasonably likely to continue to occur in the future.

216.    The actions of Defendants Rennert, Renco, and their agents were outrageous due to their evil motive or reckless indifference to the health and safety of Plaintiffs, entitling Plaintiffs to an award of punitive damages.

WHEREFORE, Plaintiffs respectfully request judgment to be entered in their favor against the Defendants jointly and severally for:

(a) an amount of damages in such sum as is fair and reasonable to compensate the Plaintiffs in an amount in excess of TWENTY FIVE THOUSAND DOLLARS ($25,000);

(b) punitive damages in an amount sufficient to punish and deter the Defendants from further such conduct;

(c) their costs and expenses;

(d) pre- and post-judgment interest as allowed by statute and law; and

(e) such further relief as the Court deems appropriate.

**COUNT XI – DIRECT PARTICIPATION LIABILITY**
**As to Defendants Renco, Rennert, and the Trusts**

Electronically Filed - City of St. Louis - February 16, 2018 - 05:09 PM

217.    Plaintiffs repeat the allegations contained in Paragraphs 1 through 107, and incorporate them by reference herein.

218.    Defendant Renco, by and through its agent and director and owner Defendant Rennert, together and each of them, and together with the Defendant Trusts, assumed responsibility for and undertook to control the financial management and operations of DRP and the La Oroya Complex.

219.    Defendant Renco, by and through its agent and director and owner Defendant Rennert, together and each of them, and by and through their agents, and together with the Defendant Trusts, wholly controlled the finances related to the management and operations of DRP and the La Oroya Complex (and DRM until its merger into DRP and subsequent dissolution), including but not limited to approvals for operating expenses such as electric bills, and in particular with regard to their the loan and credit obligations, cash flows, and other such financing issues.

220.    These Defendants herein identified also wholly controlled DRP's and the La Oroya Complex's spending through a process whereby Defendant Rennert personally approved authorizations for expenditure, including but not limited to those related to operations, improvements, maintenance, and capital expenses, and in particular to those related to critical environmental issues in or near La Oroya, modernization projects, and improvements of the La Oroya Complex; many of these projects and expenses directly and explicitly related to the emissions from the La Oroya Complex.

221.    These Defendants herein identified also maintained the decision-making authority with regard to deferring or eliminating capital expenses and/or denying authorization for

Electronically Filed - City of St. Louis - February 16, 2018 - 05:09 PM

expenditures related to modernization projects and other improvements of the La Oroya

Complex in order to increase cash flows and profits for their own benefit.

222.    Simultaneously, Defendant Renco, by and through its agent, director, and owner

Defendant Rennert, together and each of them, and by, through, and together with the

Defendants herein named, promulgated an operating policy whereby cash was funneled out of

the subsidiaries, through the parent companies, and directly to Defendant Renco, either as

intercompany "loans" or fees for "services" and "management" for the purposes of reimbursing

these Defendants' investment in the La Oroya Complex and in order to increase these

Defendants' profits and net worth; this process left DRP and La Oroya Complex underfunded

and undercapitalized.

223.    More specifically, these Defendants dictated when and if DRP's authorizations

for expenditure would be approved, and whether and when various debt and credit obligations

would be met and mandated financial operating policies which required all DRP cash and assets

to be "loaned" or otherwise funneled up through the parent companies DRM and/or Doe Run

Resources and ultimately to Renco, and then from Renco to Defendant Rennert, the Defendant

Trusts and/or to Renco subsidiaries formed and operated for the purpose of personally benefiting

Defendants Rennert and/or the Trusts.

224.    These Defendants herein identified likewise dictated and mandated the manner by

which Defendant Doe Run Resources and DRM engaged in such budgetary and expenditure

decision-making related to spending for critical environmental projects.

225.    These policies promulgated and enacted by Defendants Rennert, Renco, and their

agents: prevented DRP from making the capital and other expenditures necessary for the

improvements to operations; left DRP and the La Oroya Complex underfunded,

Electronically Filed - City of St. Louis - February 16, 2018 - 05:09 PM

undercapitalized, and without the means or resources to take necessary steps to make improvements, perform maintenance, and meet credit and debt obligations; and/or detrimentally delayed necessary improvements, maintenance, and modernization efforts that directly impacted critical environmental issues such as toxic emissions, remediation, and other such matters pertaining to the health and safety of the Plaintiffs.

226.    In so doing, Defendant Renco, by and through its agent, director, and owner Defendant Rennert, together and each of them, participated in and exerted total control over financing of, funding for, and spending pertaining to the La Oroya Complex; this control was beyond that of a typical parent-subsidiary relationship.

227.    In so doing, Defendants Rennert and Renco and their agents meddled in the affairs of Defendant Doe Run Resources in its operation and management of the La Oroya Complex, DRP, and DRM and/or overrode the decision-making of Doe Run Resources in its operation and management of the La Oroya Complex, DRP, and DRM. Such meddling, interference, and control exceeded mere oversight, and as such, was not that of a typical parent-subsidiary relationship.

228.    Defendants Rennert, Renco, and their agents likewise disregarded the normal and orderly procedure of corporate control by serving as the sole member and director of the companies in lieu of a board of decision-making boards of directors and as the sole shareholder of the companies.

229.    These policies promulgated and enacted by Defendants Rennert, Renco, and their agents, and these mandates and requirements by Defendants Rennert, Renco, and their agents, were to the detriment of DRP, DRM, and at times to the detriment of Defendant Doe Run

Electronically Filed - City of St. Louis - February 16, 2018 - 05:09 PM

Resources, while being to the advantage of and for the benefit of Defendants Rennert, the Trusts, Renco, and their agents.

230.    It was foreseeable that such interference with, control of, and meddling with the management, operations, and financing of DRP and the La Oroya Complex, and particularly of critical environmental projects, would directly impact the health and safety of Plaintiffs and cause harm to the health and safety of the Plaintiffs.

231.    In assuming and taking control of the management and operations of the La Oroya Complex, and/or with regard to the financing of critical environmental projects that, if delayed, postponed, or not executed at all would foreseeably harm these Plaintiffs, these Defendants herein described had a duty to ensure the Plaintiffs were not subject to these foreseeable harms and to prevent Plaintiffs from suffering such injuries.

232.    These Defendants' interference with, control of, and meddling into the management and operations of DRP and the La Oroya Complex, and specifically with regard to funding critical environmental projects, did negatively impact the health and safety of the Plaintiffs, and did cause these Plaintiffs to suffer the herein-described injuries; as such, these Defendants breached their duty of care by directly meddling with the management and operations of the metallurgical complex with regard to the total control and domination of the finances and funding for critical environmental projects.

233.    These Defendants' acts and omissions herein described and thus their breach of duty directly and proximately caused the release of toxic substances into the environment and the community surrounding the La Oroya Complex, including to properties where Plaintiffs have in the past and/or continue to reside, use, visit, and/or were exposed, resulting in toxic exposure to Plaintiffs.

Electronically Filed - City of St. Louis - February 16, 2018 - 05:09 PM

234.    As a direct and proximate result of the toxic emissions and environmental contamination, Plaintiffs have suffered, currently suffer, and will continue to suffer injuries, damages and losses which include but are not limited to: physical and psychological injuries, learning and other permanent disabilities, pain, mental anguish, emotional distress, the loss of household services, the cost of medical, educational, and rehabilitation expenses and other expenses of training and assistance, and loss of earnings, income, and earning capacity. Such injuries, damages and losses are reasonably likely to continue to occur in the future.

235.    Because these Defendants so dominated, controlled, interfered with, and meddled with DRP's operation of the La Oroya Complex and thereby prevented DRP from ensuring necessary steps were taken to protect the Plaintiffs and/or caused the undercapitalization that left DRP unable to perform such actions that would ensure the health and safety of Plaintiffs, Defendant Renco, by and through its agent and director and owner Defendant Rennert, together and each of them, and by and through their agents, and together with the Defendant Trusts, are directly liable for Plaintiffs' damages.

236.    Because these Defendants herein identified committed these acts and omissions with reckless disregard for the health and safety of the Plaintiffs, and knowingly caused or allowed to occur the harms and injuries to the Plaintiffs, and/or created a state of existence whereby DRP could not take steps to ensure Plaintiffs' health and safety, Plaintiffs are entitled to an award of punitive damages.

WHEREFORE, Plaintiffs respectfully request judgment to be entered in their favor against the Defendants jointly and severally for:

Electronically Filed - City of St. Louis - February 16, 2018 - 05:09 PM

(a) an amount of damages in such sum as is fair and reasonable to compensate the

Plaintiffs in an amount in excess of TWENTY FIVE THOUSAND DOLLARS

($25,000);

(b) punitive damages in an amount sufficient to punish and deter the Defendants from

further such conduct;

(c) their costs and expenses;

(d) pre- and post-judgment interest as allowed by statute and law; and

(e) such further relief as the Court deems appropriate.

DATED:  February 16, 2018

Respectfully submitted,

SCHLICHTER, BOGARD & DENTON

By: /s/ Elizabeth M. Wilkins
JEROME J. SCHLICHTER #32225
ROGER C. DENTON #30292
KRISTINE K. KRAFT #37971
ELIZABETH M. WILKINS #61284
TARA ROCQUE #59246
100 South 4th Street, Suite 1200
St. Louis, MO 63102
(314) 621-6115
(314) 621-7151 (fax)
jschlichter@uselaws.com
rdenton@uselaws.com
kkraft@uselaws.com
bwilkins@uselaws.com
trocque@uselaws.com